STATE of Utah, Plaintiff and
Respondent,

v.

Phillip Paul LAROCCO, Defendant
and Petitioner.

No. 870412.

Supreme Court of Utah.

May 30, 1990.

Lisa J. Remal, Joan C. Watt, Salt Lake City, for defendant and petitioner.

R. Paul Van Dam, Barbara Bearnson, Salt Lake City, for plaintiff and respondent.

DURHAM, Justice:

Defendant was convicted in the District Court of the Third Judicial District, Salt Lake County, of theft and possession of a stolen vehicle. The Utah Court of Appeals affirmed the convictions, and this court granted certiorari. Defendant contends that the trial court erred in (1) instructing the jury it could convict defendant of both theft and possession of the same stolen vehicle; (2) admitting evidence obtained without a search warrant; and (3) refusing to grant a mistrial after a conversation between a juror and a prosecution witness.

In June of 1981, a distinctive 1973 Ford Mustang was reported stolen from State Auto Sales. The theft allegedly occurred when a salesman allowed defendant, who had visited the car lot and spoken with the salesman on two previous occasions, to take the car for an unaccompanied test drive. Defendant failed to return the car or pay for it. In May of 1985, the same salesman saw defendant at another car sales showroom. He obtained defendant's name and address and relayed that information to William Padilla, the owner of State Auto Sales. Mr. Padilla could not locate the exact street address, but did observe a Mustang he believed to be the stolen car parked on the street within a couple of blocks of the address. Mr. Padilla noted the license number and called the police.

Shortly thereafter, Detective Robison, in response to Mr. Padilla's call, observed the Mustang parked in front of what proved to be defendant's home and ascertained through state licensing records that the Mustang was registered in defendant's name. Detective Robison also checked the vehicle identification number (VIN) listed with the state for the vehicle's registration and was informed that Mr. Neil Hailes had purchased the car in 1973 and registered it through 1975; the next registration entry for the VIN was to defendant.

About a week later, Detective Robison, accompanied by another detective and an official from the Department of Motor Vehicles, went back to defendant's home, where the car was still parked. They looked through the windshield at the VIN tag on the dashboard. The VIN matched the VIN identified as being that of Mr. Hailes' Mustang but did not match the VIN of the vehicle stolen from Mr. Padilla's car lot. The individual from the Department of Motor Vehicles inspected the VIN on the dashboard from the exterior of the vehicle and determined that it appeared to have been affixed in the normal manner. The officers then, without a warrant, opened the unlocked door and observed the VIN on the safety standard sticker on the inside edge of the door. This VIN differed from that on the dashboard but matched that of the stolen Mustang. The officers then went to defendant's home, read him his *Miranda* rights, and arrested him. Defendant consistently claimed that he had purchased the Mustang. Subsequent investigation revealed that Neil Hailes' Mustang had been totally destroyed in a car accident in December of 1975.

## The Lesser Included Offense

▮ Defendant was convicted of theft of a motor vehicle. The jury also found him guilty of possession of the same stolen vehicle. Defendant argues that possession of a stolen vehicle is a lesser included offense of theft of that vehicle. *See* Utah Code Ann. § 76–1–402(3) (1978).

The court of appeals affirmed the convictions, holding that under the facts of this case (1) the trial court did not err in refusing to instruct the jury that possession of a stolen vehicle is a lesser included offense of theft of the vehicle, and (2) the trial court did not err in allowing the jury to convict defendant of both theft and possession of the stolen vehicle. We affirm in part and reverse in part.

We disagree with defendant as to his right to have the jury instructed that possession of a stolen vehicle is a lesser included offense of theft of that vehicle. In *State v. Baker*, 671 P.2d 152 (Utah 1983), this court held that the trial court is obligated to instruct on a lesser included offense only when there is a "rational basis for a verdict acquitting the defendant of the offense charged and convicting him of the included offense." *Id.* at 159 (quoting Utah Code Ann. § 76–1–402(4) (1978)). In the present case, the evidence presented at trial to establish defendant's theft of the Mustang was not ambiguous or subject to an alternative interpretation requiring the court to instruct on the lesser included offense of possession. The salesman had positively identified defendant as the person who had been at State Auto Sales on three occasions to talk with him about the Mustang. Defendant was immediately recognized by said salesman some four years later, and he unequivocally identified defendant at trial as the person who had taken the car and failed to return it. Because this court can identify no rational basis whereby defendant could have been acquitted of the greater offense and simultaneously convicted of the lesser offense, we hold that the trial court did not err in refusing defendant's proposed instruction.

▮ We agree with defendant, however, that under the facts of this case, possession of a stolen vehicle is a lesser included offense of theft of a vehicle. A charge is a lesser included offense when "[i]t is established by proof of the same or less than all the facts required to establish the commission of the offense charged." *State v. Branch*, 743 P.2d 1187, 1191 (Utah 1987) (quoting Utah Code Ann. § 76–1–402(3)(a) (1978)).

In *State v. Hill*, 674 P.2d 96 (Utah 1983), we considered whether theft was a lesser included offense of aggravated robbery. The analysis set forth in that case is controlling here. In *Branch*, we applied the *Hill* test in setting forth the proper analysis for determining lesser included offenses:

The principal test [for whether a crime is a lesser included offense] involves a comparison of the statutory elements of each crime. Subsection 76–1–402(3)(a) provides the definition of lesser included offenses that is applied for this purpose: an offense is lesser included when "[i]t is established by proof of the same or less than all the facts required to establish the commission of the offense charged...." Thus, where the two crimes are "such that the greater cannot be committed without necessarily having committed the lesser," then as a matter of law they stand in the relationship of greater and lesser offenses, and the defendant cannot be convicted or punished for both.

. . . .

The secondary test is required by the circumstance that some crimes have multiple variations, so that a greater-lesser relationship exists between some variations of these crimes, but not between others. A theoretical comparison of the statutory elements of two crimes having multiple variations will be insufficient. In order to determine whether a defendant can be convicted and punished for two different crimes committed in connection with a single criminal episode, the court must consider the evidence to determine whether the greater-lesser relationship exists between the specific var-

iations of the crimes actually proved at trial.

*Branch,* 743 P.2d at 1191 (quoting *State v. Hill,* 674 P.2d at 97) (citations omitted).

Utah Code Ann. § 76–6–404 (1978) states, "A person commits theft if he obtains or exercises unauthorized control over the property of another with a purpose to deprive him thereof." As stated in Utah Code Ann. § 76–6–412(1)(a)(ii) (1978), theft of an "operable motor vehicle" is a second degree felony. Defendant was also charged with possession of a stolen vehicle pursuant to Utah Code Ann. § 41–1–112 (1981), which states:

> Any person who, with intent to procure or pass title to a vehicle which he knows or has reason to believe has been stolen or unlawfully taken, receives, or transfers possession of the same from or to another, or who has in his possession any vehicle which he knows or has reason to believe has been stolen or unlawfully taken, and who is not an officer of the law engaged at the time in the performance of his duty as such officer, is guilty of a felony.

In applying the first prong of the *Hill* test, we must compare the elements of the two offenses. By definition, theft contains two elements: (1) obtaining or exercising unauthorized control over the property of another, (2) with a purpose to deprive him thereof. Possessing a stolen vehicle also contains two elements: (1) possessing a vehicle, and (2) knowing or having reason to believe it was stolen. Both of the elements of possession of a stolen vehicle are necessarily included in the first element of theft. Hence, the first prong of the *Hill* test is met.

The second prong of the *Hill* test requires a determination as to whether "the greater-lesser relationship exists between the specific variations of the crimes...." *Hill,* 674 P.2d at 97. A year or two (the record does not disclose the exact date) after stealing the Mustang, defendant was incarcerated in the Utah State Prison for stealing a truck. During the summer of 1982, the Mustang was "dropped off" at the house of defendant's brother-in-law, un-

der whose care it remained until defendant took back the car after his release in early 1985. The State contends that the four-year gap between the theft charge and the possession charge precludes defendant's contention that the acts derived from a single criminal episode. The State also contends that defendant's conscious decision to again take possession of the Mustang was an act additional to, and distinct from, the original theft. The State, citing *People v. Jaramillo,* 16 Cal.3d 752, 759, 548 P.2d 706, 710 n. 8, 129 Cal.Rptr. 306, 310 (1976), calls this a "complete divorcement" between the two acts.

While it is true that a significant amount of time passed from the time defendant stole the car and the time he was found in possession thereof, this gap in and of itself does not justify separate convictions of theft and possession. Had defendant been apprehended shortly after the theft, he would surely have been charged and convicted of only the greater offense. Nor does defendant's resuming possession of the car following his release from prison result in a "complete divorcement" between the two crimes. The record does not indicate that defendant ever relinquished his claim of ownership or passed title to the car, nor does it indicate that defendant's brother-in-law ever registered the car. We hold that a "greater-lesser" relationship exists between the specific variations of the crimes of theft and possession actually proved at trial, thus satisfying the second prong of the *Hill* test. Defendant should not have been convicted of both crimes.

### Search and Seizure: Standing

Before we can consider the search and seizure issue, we must determine if defendant has standing to challenge the legality of the search. In addressing the issue of defendant's standing to protest the alleged unlawful search, the court of appeals, citing *State v. Constantino,* 732 P.2d 125 (Utah 1987), concluded that standing would require at least a claimed right to possession in the property. The court of appeals distinguished those Utah search and seizure cases in which standing was

denied from the case at hand because in each case where standing was denied, it was clearly established and not disputed prior to the search that the defendant did not own or did not have an interest in the property searched. *See State v. Valdez,* 689 P.2d 1334 (Utah 1984); *State v. Purcell,* 586 P.2d 441 (Utah 1978); *State v. Montayne,* 18 Utah 2d 38, 414 P.2d 958 (1966).

We agree. Where a defendant has not declared beforehand that he has no interest in the vehicle and where proof that the car was stolen is an issue at trial, the court of appeals is correct in holding that the defendant has standing to challenge the legality of the search.

### Search

■ The determinative question on the unlawful search and seizure issue is whether the police officers were justified in opening the unlocked car door in search of the additional VIN to verify the VIN located on the dashboard. Defendant has challenged the lawfulness of the search under the Utah and the federal constitutions.

The court of appeals, relying on *New York v. Class,* 475 U.S. 106, 106 S.Ct. 960, 89 L.Ed.2d 81 (1986), found defendant to have no reasonable expectation of privacy under the federal fourth amendment in the VIN discovered after the police officers opened the car door. *State v. Larocco,* 742 P.2d 89, 93–95 (Utah Ct.App.1987). The court read *Class* to compel the conclusion that, because there was no reasonable expectation of privacy in the VIN, there could be no search within the meaning of the fourth amendment. *Id.* We agree with the dissent below that *Class* does not require such a conclusion.

In *Class,* the police officer, after stopping a car for two traffic violations and after the driver had left the car, reached into the car to move some papers that were obscuring the area of the dashboard where the VIN was located. In so doing, he saw the handle of a gun protruding from underneath the driver's seat. The defendant later moved to suppress the gun as evidence on the ground that it was the result of an illegal search.

Because the focus of the alleged unconstitutional search in *Class* was the gun rather than the VIN itself, the Court, while holding that there is no reasonable expectation of privacy in a VIN, did not clearly articulate when one has a reasonable expectation of privacy in a VIN located inside one's automobile. In *State v. Schlosser,* 774 P.2d 1132 (Utah 1989), we addressed the issue of whether a police officer's opening the passenger door for investigatory purposes constitutes a search under the fourth amendment. In finding that such conduct was subject to fourth amendment protection, we cited *Class* to stand for the proposition that a search had occurred:

> [T]he Supreme Court stated that "a car's interior as a whole is ... subject to Fourth Amendment protection from unreasonable intrusions by the police." The Court held that an officer's opening the driver's door of an automobile to examine the vehicle identification number constituted a "search" and that the search was justified because the officer sought only to uncover the VIN ..., a number required by state law to be located in plain view from outside the vehicle. The Court warned, however, that "[i]f the VIN is in the plain view of someone outside the vehicle, there is no justification for governmental intrusion into the passenger compartment to see it."

*Id.* at 1135 (quoting *Class,* 475 U.S. at 114–15, 119, 106 S.Ct. at 966, 968–69). We think Judge Billings of the court of appeals was correct in her dissent:

> [T]he reasoning of the Supreme Court in *Class* persuades me that defendant had a reasonable expectation of privacy in the VIN located inside his car after the officers had read the VIN on his dashboard from outside the car and found nothing out of the ordinary which would justify a further search.

*State v. Larocco,* 742 P.2d at 102.

Thus, *Class* may fairly be read as meaning that an officer's opening a car door to examine a VIN on a doorjamb constitutes a search under the fourth amendment. This

view would be consistent with the view taken by Professor LaFave, who in his treatise on search and seizure wrote with reference to *Class:*

> [A]n assumption that the phrase "this search" refers only to the physical intrusion into the interior is hardly a compelling one. Nor is the matter settled by the Court's statement that there is no privacy expectation as to the VIN on the doorjamb, for that is also true of the dashboard VIN but yet did not stop the Court from concluding that very limited steps to reveal that VIN still had to be characterized as a search. Given the Supreme Court's earlier conclusion in *Katz* that a physical entry into a "constitutionally protected area" is not essential in order for there to have occurred a Fourth Amendment search, it would seem that opening a vehicle door to see an otherwise hidden VIN is likewise a search....

1 W. LaFave, *Search and Seizure* § 2.5(d), at 456–57 (2d ed. 1987). Because of its facts, *Class* is open to conflicting interpretations. Were we deciding this case under federal law, we would hold that a search was conducted within the meaning of the fourth amendment. Instead of relying on federal law, however, we analyze this question under the Utah Constitution.

### State Constitutional Analysis

In *State v. Watts*, 750 P.2d 1219 (Utah 1988), this court explained that because of the similarity between article I, section 14 of the Utah Constitution and the fourth amendment of the United States Constitution, we have not in the past drawn any distinctions between the protections respectively afforded by them. *Id.* at 1221. We then noted, however, that "we have by no means ruled out the possibility of doing so in some future case" since "choosing to give the Utah Constitution a somewhat different construction may prove to be an appropriate method for insulating this state's citizens from the vagaries of inconsistent interpretations given to the fourth amendment by the federal courts." *Id.* at n. 8. As the Washington Supreme Court stated under similar circumstances:

> Prior reliance on federal precedent and federal constitutional provisions [does] not preclude us from taking a more expansive view of [the state constitution] where the United States Supreme Court determines to further limit federal guarantees in a manner inconsistent with our prior pronouncements.

*State v. Jackson*, 102 Wash.2d 432, 439, 688 P.2d 136, 140–41 (1984).

An increasing number of state courts are relying on an analysis of the search and seizure provisions of their own constitutions to expand or maintain constitutional protection beyond the scope mandated by the fourth amendment. *See, e.g., State v. Glass*, 583 P.2d 872 (Alaska 1978); *State v. McGann*, 124 N.H. 101, 467 A.2d 571 (1983); *People v. Class*, 67 N.Y.2d 431, 494 N.E.2d 444, 503 N.Y.S.2d 313, *on remand from New York v. Class*, 475 U.S. 106, 106 S.Ct. 960, 89 L.Ed.2d 81 (1986); *State v. Caraher*, 293 Or. 741, 653 P.2d 942 (1982); *State v. Opperman*, 247 N.W.2d 673 (S.D. 1976).

In *Malan v. Lewis*, 693 P.2d 661 (Utah 1984), this court, in applying another provision of the Utah Constitution which has a counterpart in the federal bill of rights, showed a willingness to diverge from the United States Supreme Court's application of the equal protection clause:

> Although Article *I*, § 24 of the Utah Constitution incorporates the same general fundamental principles as are incorporated in the Equal Protection Clause, our construction and application of Article *I*, § 24 are not controlled by the federal courts' construction and application of the Equal Protection Clause. Case law developed under the Fourteenth Amendment may be persuasive in applying Article *I*, § 24, but that law is not binding so long as we do not reach a result that violates the Equal Protection Clause.

*Id.* at 670 (citations omitted); *see also State v. Brooks*, 638 P.2d 537 (Utah 1981).

Several state courts have found that conduct similar to that of the police in this case does constitute a search. In *State v. Turechek*, 74 Or.App. 228, 702 P.2d 1131

(1985), the Oregon Court of Appeals held that a police officer "conducted a search within the meaning of Article I, section 9 of the Oregon Constitution when he opened the door [of a pickup truck] to inspect the VIN." 74 Or.App. at 232, 702 P.2d at 1134. In finding a search, the court quoted the Washington Supreme Court, which had recognized in *State v. Simpson*, 95 Wash.2d 170, 184, 622 P.2d 1199, 1208 (1980), "The degree of privacy interest in the part of the vehicle where the VIN is located is a separate question from the extent of privacy interest in the serial number itself." *State v. Turechek*, 74 Or.App. at 232, 702 P.2d at 1133–34. The Supreme Court of Hawaii has taken the view that checking an engine number which is located inside the vehicle constitutes a search under the Hawaii Constitution. *See State v. Moore*, 66 Haw. 202, 659 P.2d 70 (1983); *State v. Agnasan*, 62 Haw. 252, 614 P.2d 393 (1980). In addition, the New Hampshire Supreme Court held under its state constitution "that an official inspection of a VIN which is not in plain view and which is located within the vehicle constitutes a search." *State v. McGann*, 124 N.H. at 104, 467 A.2d at 573.

The New York Court of Appeals maintained the view that the state constitution had been violated even after the United States Supreme Court held that the fourth amendment had not in *People v. Class*. More recently, in *People v. Torres*, 74 N.Y.2d 224, 543 N.E.2d 61, 544 N.Y.S.2d 796 (Ct.App.1989), that court elaborated on its rationale for independent state constitutional analysis:

> [W]e note that although the history and identical language of the state and federal constitutional privacy guarantees generally support a "policy of uniformity," this court has demonstrated its willingness to adopt more protective standards under the state Constitution "when doing so best promotes predictability and precision in judicial review of search and seizure cases and the protection of the individual rights of our citizens." (*People v. P.J. Video*, 68 N.Y.2d 296, 304 [508 N.Y. S.2d 907, 501 N.E.2d 556 (1986)] (on remand), quoting *People v. Johnson*, 66 N.Y.2d 398, 407 [497 N.Y.S.2d 618, 488 N.E.2d 439 (1985)]]). Accordingly, we have in recent years carved out an independent body of principles to govern citizen-police encounters in a number of specific areas. . . .

> A police officer's entry into a citizen's automobile and his inspection of personal effects located within are significant encroachments upon that citizen's privacy interests. . . . Under our own longstanding precedent, such intrusions must be both justified in their inception and reasonably related in scope and intensity to the circumstances which rendered their initiation permissible. . . .

74 N.Y.2d at 228–30, 543 N.E.2d at 63–65, 544 N.Y.S.2d at 798–800 (citations omitted).

We likewise conclude that a constitutional privacy interest exists in the interior of an automobile and that the opening of the car door by the police officer here constituted a search. We now determine whether this search violated article I, section 14 of the Utah Constitution. Our analysis logically begins with a consideration of the history of the warrant requirement under the federal constitution with respect to automobile searches.

The United States Supreme Court's interpretation of the fourth amendment, especially in the context of automobile searches, has been the source of much confusion among judges, lawyers, and police. Justice Powell has commented, "[T]he law of search and seizure with respect to automobiles is intolerably confusing. The court apparently cannot agree even on what it has held previously, let alone on how these cases should be decided." *Robbins v. California*, 453 U.S. 420, 430, 101 S.Ct. 2841, 2848, 69 L.Ed.2d 744 (1981) (concurring in a decision where an automobile search was found violative of the fourth amendment while another case decided the same day found an automobile search valid under the fourth amendment). Robert M. Bloom has written a detailed study of the Court's inconsistent treatment of the fourth amendment. Bloom, *Warrant Requirement— The Burger Court Approach*, 53 U.Colo.L. Rev. 691 (1982) [hereinafter Bloom]. We

rely upon that study in the following discussion.

The fourth amendment, like article I, section 14 of the Utah Constitution,[1] consists of two clauses joined by the conjunction "and":

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

Although on its face this language suggests that the two clauses be read together, this has not always been done. The Supreme Court has sometimes interpreted the first (or reasonableness) clause as distinct from the second (or warrant) clause. Under this approach, termed the "reasonableness approach" by Bloom, a warrant becomes only one of many factors considered in determining whether a search was reasonable. Bloom, at 692. At other times, the Court has interpreted the two clauses in conjunction with one another; Bloom terms this the "warrant approach." *Id.* The Court applied the warrant approach in *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), and held that "searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment" and that this requirement is "subject only to a few specifically established and well-delineated exceptions." *Id.* at 357, 88 S.Ct. at 514 (including the automobile exception to be discussed below). While this approach was preferred in the earlier periods of fourth amendment law development, the Court has more recently vacillated between the two approaches. Since the choice of approach generally determines whether a warrant will be required, the vacillation has

resulted in a number of inconsistent opinions.

Much of the confusion in this area of the law has resulted from the Court's misapplication of the expectation-of-privacy doctrine discussed in *Katz.* *Katz* held that an individual's expectation of privacy was a suitable criterion for determining whether the fourth amendment was applicable. Under *Katz,* once the fourth amendment was implicated, the necessity of obtaining a warrant was a separate question. From 1970 to 1976, the Court, deviating from its earlier preference for the warrant approach and relying on the reasonableness approach, began to misapply *Katz* by focusing on the expectation of privacy in determining whether a warrant was required. Even where an expectation of privacy existed so that the fourth amendment was applicable, the Court articulated a concept of diminished or lesser expectations of privacy which it used to justify the reasonableness approach and to dispense with the warrant requirement. In 1976, after the previous six years of analysis under the reasonableness approach, the Court explicitly stated its preference for the warrant approach. In order to maintain doctrinal consistency with its previous approach, however, the Court only utilized the warrant approach when it found sufficient expectation of privacy. This sliding scale for measuring expectations of privacy has caused great confusion in fourth amendment case law generally and especially in automobile search cases.

One traditional exception to the warrant approach, under which warrantless searches were per se unreasonable, was the so called automobile exception. This exception was articulated in *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). The *Carroll* Court concluded that where it is not practicable to secure a warrant because the vehicle may be quickly moved out of the jurisdiction

---

1. Article I, section 14 of the Utah Constitution states:

   The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue but upon probable cause supported by oath or affirmation, particularly describing the place to be searched, and the person or thing to be seized.

(exigent circumstances) and when the officer has probable cause to believe that the vehicle is involved in criminal activity, no search warrant is required. *Id.* at 151–52, 45 S.Ct. at 284. These two requirements—exigent circumstances and probable cause—offered a workable framework for determining when a warrant would be required to search an automobile. However, the cases involving automobiles decided since *Carroll* and during the period of vacillation between the reasonableness approach and the warrant approach have created a state of uncertainty and disagreement as to when a warrant will be required for an automobile search under the federal constitution.

In *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), the Court upheld a warrantless search of an automobile which occurred after the occupants had been arrested and the car had been driven to the police station. The Court seemed to ignore the mobility factor outlined in *Carroll* as a justification for the automobile exception by holding that "there is little to choose in terms of practical consequences" between a search at the scene and one at the station house. *Id.* at 52, 90 S.Ct. at 1981. A plurality of the Court seemed to have misgivings about the *Chambers* decision a year later when in *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), it reiterated the position that warrantless searches are per se unreasonable and subject only to a few specifically established exceptions. In *Coolidge*, the Court invalidated a warrantless search of an arrestee's automobile, but distinguished the case from *Chambers* in that the *Coolidge* automobile was parked in a private driveway while the *Chambers* car had been moving on a public highway. *Coolidge*, 403 U.S. at 460, 91 S.Ct. at 2034.

The *Coolidge* position, however, soon lost favor. In *Cardwell v. Lewis*, 417 U.S. 583, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974), the Court concluded that there was little or no invasion of privacy when police examined a tire tread and took paint scrapings from the exterior of an automobile left in a public parking lot. This case, as explained by

Bloom, represented a misapplication of *Katz*.

Rather than utilizing the *Katz* expectation of privacy test to conclude that the fourth amendment was not implicated in this situation, and therefore no warrant or probable cause for that matter, was required, the Cardwell plurality instead believed that no warrant was required because of a reduced expectation of privacy. "Stated simply, the invasion of privacy, if it can be said to exist, is abstract and theoretical.... Under circumstances such as these, where probable cause exists, a warrantless examination of the exterior of a car is not unreasonable under the Fourth and Fourteenth Amendment." [*Cardwell* at 591–92, 94 S.Ct. at 2470]. The plurality utilized an expectation of privacy analysis to justify a warrantless search rather than to determine whether fourth amendment activity was implicated.

Bloom, at 710. The *Cardwell* plurality relied in part upon the notion that "[o]ne has a lesser expectation of privacy in a motor vehicle because its function is transportation and it seldom serves as one's residence or as the repository of personal effects." *Cardwell*, 417 U.S. at 590, 94 S.Ct. at 2469.

The reasoning behind the diminished expectation theory is questionable, as one critic has pointed out:

The Supreme Court concluded that the diminished expectation of privacy surrounding the automobile is due to subjection of its occupants to public view, its use for transportation rather than for storing personal effects, and its extensive regulation by the government.... When one rides in an automobile, he accepts that he himself and those items left uncovered on the dashboard or seat are no longer "private." In contrast, the driver or occupant of a vehicle who places objects under the seat, in a locked or unlocked glove compartment, or in a trunk does not surrender his expectation of privacy in those items. Although *Katz* recognized that one surrenders his privacy in that which he places in public view, *Katz* and *Chadwick* specifically recognize that an individual may protect

his privacy by taking precautions. That is exactly what the occupant of an automobile does when he places items out of sight, whether or not in closed compartments.

The second prong of the test is also subject to attack. As the Court has noted often, although the automobile is primarily used for transportation, it can also be used for a repository for personal effects. There are probably few Americans who have not at one time or another used their cars for storage, albeit unwisely. All personal effects so stored are entitled to fourth amendment protection; constitutional guarantees are not reserved only for valuable possessions carefully protected by their owners. Most Americans view the automobile as more than merely a means of transportation.

Finally, the high degree of government regulation does not support the excessive diminution of fourth amendment protection of the automobile which accompanies application of the automobile exception. A legitimate interest in securing compliance with safety and traffic regulations should not be used to justify a reduced expectation of privacy in the entire vehicle.

3 W. LaFave, *Search and Seizure* § 7.2(b), at 33–34 (quoting Katz, *Automobile Searches and Diminished Expectations in the Warrant Clause*, 19 Am.Crim.L.Rev. 557, 570–72 (1982).

In *California v. Carney*, 471 U.S. 386, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985), the Court dramatically expanded the circumstances where warrantless searches of motor vehicles would be allowed by nearly eliminating the requirement of exigent circumstances. The Court in *Carney* noted that "the capacity to be 'quickly moved' was clearly the basis of the holding in *Carroll*" but was no longer "the only basis for the [automobile] exception." *Id.* at 390–91, 105 S.Ct. at 2069. The Court was referring to the notion that, as stated in post-*Carroll* cases, "the expectation of privacy with respect to one's automobile is significantly less than that relating to one's home or office." *Id.* at 391, 105 S.Ct. at 2069 (quoting *South Dakota v. Opperman*, 428 U.S. 364, 367, 96 S.Ct. 3092, 3096, 49 L.Ed.2d 1000 (1976)).

The Supreme Court's *Chambers*-through-*Carney* line of cases cannot be squared with the oft-stated principle that warrants-when-practicable is the best policy. 3 W. LaFave, *Search and Seizure* § 7.2(b), at 35. These cases expand the automobile exception by ignoring the mobility factor and implementing the rationale of diminished expectation of privacy. This expansion and the vacillation between the warrant approach and the reasonableness approach have resulted in significant confusion about federal search and seizure law regarding automobiles.

In *State v. Hygh*, 711 P.2d 264 (Utah 1985) (Zimmerman, J., concurring), two members of this court expressed dismay over the current state of federal search and seizure law generally, describing it as "a labyrinth of rules built upon a series of contradictory and confusing rationalizations and distinctions." *Id.* at 271–72. Justice Zimmerman expressed concern that "[p]olice officers and judges attempting to make their way through this labyrinth often imperil both the rights of individuals and the integrity and effectiveness of law enforcement." *id.* at 272.

■ The time has come for this court, in applying an automobile exception to the warrant requirement of article I, section 14 of the Utah Constitution, to try to simplify, if possible, the search and seizure rules so that they can be more easily followed by the police and the courts and, at the same time, provide the public with consistent and predictable protection against unreasonable searches and seizures. This can be accomplished by eliminating some of the confusing exceptions to the warrant requirement that have been developed by federal law in recent years. *See id.* Specifically, this court will continue to use the concept of expectation of privacy as a suitable threshold criterion for determining whether article I, section 14 is applicable. Then if article I, section 14 applies, warrantless searches will be permitted only where they

satisfy their traditional justification, namely, to protect the safety of police or the public or to prevent the destruction of evidence. *See id.; see also, e.g., Chimel v. California*, 395 U.S. 752, 762–63, 89 S.Ct. 2034, 2039–40, 23 L.Ed.2d 685 (1969).

As Justice Zimmerman explained in *Hygh:*

> Once the threat that the suspect will injure the officers with concealed weapons or will destroy evidence is gone, there is no persuasive reason why the officers cannot take the time to secure a warrant. Such a requirement would present little impediment to police investigations, especially in light of the ease with which warrants can be obtained under Utah's telephonic warrant statute, U.C.A., 1953, § 7–23–4(2) (1982 ed.).

*State v. Hygh*, 711 P.2d at 272; *see also State v. Lopez*, 676 P.2d 393 (Utah 1984).

Historically, this court, in applying article I, section 14 of the Utah Constitution to warrantless vehicle searches, has required both probable cause and exigent circumstances. In *State v. Limb*, 581 P.2d 142 (Utah 1978), we stated that the automobile exception to the warrant requirement applies when "there is probable cause to search an automobile stopped on the highway[,] the car is movable, the occupants are alerted, and the car's contents may never be found again if a warrant must be obtained." *Id.* at 144 (quoting *Chambers v. Maroney*, 399 U.S. at 51, 90 S.Ct. at 1981). We reaffirmed the exigency requirement in *State v. Christensen*, 676 P.2d 408 (Utah 1984), when we held that "[f]or this exception to apply, the police must have probable cause to believe that the automobile contains either contraband or evidence of a crime and that they may be lost if not immediately seized." *Id.* at 411. In fact, this court has consistently agreed with the view taken by the United States Supreme Court in *Katz*, as well as in *Robbins*, that "[w]arrantless searches and seizures are per se unreasonable unless exigent circumstances require action before a warrant can be obtained." *Chris-*

*tensen*, 676 P.2d at 411; *see also State v. Romero*, 660 P.2d 715 (Utah 1983); *State v. Lee*, 633 P.2d 48 (Utah 1981).

The amount of time necessary to obtain a warrant by traditional means has always been considered in determining whether circumstances are exigent. Recognizing the delay that is often incurred in procuring a warrant, Utah has adopted a procedure whereby warrants may be issued over the telephone. Section 77–23–4(2) of the Utah Code allows for the issuance of a search warrant based on the sworn telephonic statement of the officer seeking the warrant, provided that the statement is properly recorded and subsequently transcribed. Utah Code Ann. § 77–23–4(2) (1982). The statute does not require that emergency circumstances or other special justifications be shown to obtain a search warrant without a written affidavit.[2] *See Lopez*, 676 P.2d at 396.

■ The State carries the burden of showing that a warrantless search was lawful. *Christensen*, 676 P.2d at 411. In the instant case, it is the State's burden to show that both probable cause and exigent circumstances were present at the time of the search. The officers had probable cause to suspect that the Mustang they searched was stolen. The suspect had been identified, and the car found parked in front of the suspect's home had the distinctive characteristics of the stolen vehicle. Thus, the State was able to satisfy the first prong of the warrant requirement. The next step requires justification of the warrantless search by showing either that the procurement of a warrant would have jeopardized the safety of the police officers or that the evidence was likely to have been lost or destroyed. The State has failed to show this. The officers here could have easily obtained a warrant for the search of the car. There was no indication that the car would not be available, as defendant had no idea that either he or the car was under investigation. In fact, approximately a week passed between the officer's first

**2.** The increasing availability of cellular and other portable telephones to law enforcement personnel will add to the convenience of this method of obtaining warrants.

observation of the car and the search, and the car's location had not changed.

Therefore, taking into consideration the absence of exigent circumstances, we hold that the opening of the car door in this case to inspect the VIN constituted an unreasonable search under article I, section 14 of the Utah Constitution.

### Exclusionary Rule

Having concluded that a significant violation of defendant's rights under the Utah Constitution occurred in the warrantless search of the vehicle here, we must decide whether the trial court erred in refusing to suppress the VIN obtained in that search. This court has never separately articulated an exclusionary rule as a necessary part of article I, section 14, but there is a series of cases in which this court has approved the federal rule and afforded its protections to Utah citizens.

The principle that evidence obtained as the result of unlawful search and seizure should not be admitted at trial was not adopted until relatively recent times in Utah. In the case of *State v. Aime*, 62 Utah 476, 220 P. 704 (Utah 1923), this court rejected the federal rule requiring exclusion of illegally obtained evidence, noting that "the decisions of the Supreme Court of the United States as to the admissibility of evidence under [the fourth and fifth] amendments are not binding on state courts in interpreting similar provisions of their own state Constitutions." 62 Utah at 480, 220 P. at 705–06. In *Aime*, a case from the prohibition era, the court upheld the defendant's conviction despite the fact that the trial court had admitted into evidence a keg containing intoxicating liquor which had been seized pursuant to an unsigned search warrant. While the court acknowledged the illegality of the warrant, it nevertheless affirmed the lower court.

With the profoundest respect for the high tribunal which has reached a contrary conclusion, we are led by the force of what we deem the better reason to conclude with the vast majority of state courts that the admissibility of evidence is not affected by the illegality of means through which it has been obtained....

62 Utah at 484–85, 220 P. at 708. Almost 40 years later, in *State v. Fair*, 10 Utah 2d 365, 353 P.2d 615 (1960), the court found occasion to reassert its earlier holding that "[e]vidence, even though illegally obtained, is admissible." 10 Utah 2d at 366, 353 P.2d at 615.

In 1961, the United States Supreme Court ruled that federal constitutional guarantees against unlawful search and seizure required exclusion of illegally acquired evidence in state court criminal trials. *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). After *Mapp*, this court, in one justice's words, "tacitly followed the federal lead" in adopting the exclusionary rule. *State v. Hygh*, 711 P.2d at 273 (Zimmerman, J., concurring). The court wrote somewhat grudgingly in 1963 that it had

no disposition to disagree with the doctrine that where police officers have obtained evidence by illegal methods, such as unlawful search in violation of the IV Amendment to the United States Constitution and Article I, Section 14 of our Constitution, it should not be used to convict a person of crime, as held by the United States Supreme Court in *Mapp v. Ohio.*

*State v. Louden*, 15 Utah 2d 64, 66, 387 P.2d 240, 241–42 (1963). In *Louden*, the court considered, among other things, whether the police had, in light of both "the rights of citizens and the practical exigencies of police work," conducted an unreasonable search of the defendant's room. 15 Utah 2d at 67, 387 P.2d at 242. The court concluded that in the absence of "highhanded or ruthless" conduct on the officers' part, the search had been reasonable and did not warrant exclusion of the evidence obtained thereby. 15 Utah 2d at 67, 387 P.2d at 242–43.

Notwithstanding the disclaimer in *Louden* about the court's disinclination to reject the exclusionary rule as set forth in *Mapp*, the remedy of exclusion was seldom discussed explicitly in the Utah post-*Mapp* cases until this decade. For example, in

State v. Montayne, 18 Utah 2d 38, 414 P.2d 958 (1966), the court noted the general rule that evidence obtained by a violation of the fourth amendment is inadmissible, but devoted the bulk of its opinion to an analysis of the underlying constitutional issues, i.e., whether evidence used to convict the defendant had been seized as the result of an unlawful search and, if so, whether the defendant had standing to raise the issue. Similarly, in State v. Criscola, 21 Utah 2d 272, 444· P.2d 517 (1968), the defendant challenged on appeal the trial court's admission into evidence of certain items seized on two occasions following searches of the car he was driving. The court ruled that both searches had been reasonable and, inasmuch as the fourth amendment prohibits only unreasonable searches, the lower court's decision to admit the evidence had been appropriate. In State v. Kent, 20 Utah 2d 1, 432 P.2d 64 (1967), the defendant had been convicted of drug possession after a police officer who had stationed himself in the attic of the motel where the defendant was staying observed the defendant's activities over a period of several days by looking through a bathroom ceiling ventilator. The court ruled that the officer's conduct constituted an unlawful search which violated the defendant's constitutional right to privacy and held that evidence acquired as a result of the search should have been suppressed.

Implicit in, but fundamental to, this court's treatment of the legal issues in Louden, Montayne, Criscola, Kent, and other cases is the principle that if evidence used against the defendant had been found to have been acquired in violation of constitutional guarantees, its exclusion would be inevitably required. See State v. Ashe, 745 P.2d 1255 (Utah 1987); State v. Dorsey, 731 P.2d 1085 (Utah 1986); State v. Earl, 716 P.2d 803 (Utah 1986); State v. Hygh, 711 P.2d 264 (Utah 1985); State v. Lopes, 552 P.2d 120 (Utah 1976); State v. Farnsworth, 30 Utah 2d 435, 519 P.2d 244 (1974); State v. Kaae, 30 Utah 2d 73, 513 P.2d 435

(1973); State v. Shields, 28 Utah 2d 405, 503 P.2d 848 (1972). Application of the exclusionary rule in these cases is implicit in that each involved either an appeal of a trial court's ruling on a defendant's motion to suppress or a challenge to a trial court's admission of evidence claimed on appeal to have been illegally obtained.

We now expressly hold that exclusion of illegally obtained evidence is a necessary consequence of police violations of article I, section 14. In reaching this conclusion, we have found it useful to examine opinions from other state courts. The rule that unlawfully acquired evidence is inadmissible in criminal trials did not arise exclusively as a matter of federal constitutional interpretation. On the contrary, many states had held long before Mapp v. Ohio that exclusion was required as a matter of state constitutional law when police conduct violated constitutional guarantees against unreasonable search and seizure. See, e.g., State v. Arregui, 44 Idaho 43, 254 P. 788 (1927); Gore v. State, 24 Okla.Crim. 394, 218 P. 545 (1923); State v. McDaniel, 115 Or. 187, 237 P. 373 (1925); State v. Slamon, 73 Vt. 212, 50 A. 1097 (1901). Furthermore, by the time Mapp v. Ohio made the Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914), exclusionary rule applicable to the states, more than half of them were already voluntarily applying it. Mapp, 367 U.S. at 652, 81 S.Ct. at 1690. At least eighteen states have adopted an independent state constitutional exclusionary rule.[3]

The critical question at this point in the history of the federal exclusionary rule is not its existence, but rather its nature and scope. The United States Supreme Court's holding in the Weeks case in 1914 strongly suggested that the Court believed that the admission of unconstitutionally obtained evidence was itself unconstitutional and that the exclusionary rule was therefore a constitutional requirement. Forty-seven years later, Justice Harlan, in his dissent in

3. These states are Alaska, Colorado, Connecticut, Hawaii, Kentucky, Louisiana, Massachusetts, Michigan, Montana, New Hampshire, New Jersey, New Mexico, New York, North Dakota, Oregon, Pennsylvania, Washington, and Wisconsin. Texas has a statutory exclusionary rule which pre-dates Mapp v. Ohio.

*Mapp,* articulated the view that the rule was not a constitutional requirement, but rather a judicially created remedy, a position taken by a majority of the Court thirteen years later in *United States v. Calandra,* 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974). In *Calandra,* Justice Brennan argued in dissent that the rule's primary objective was not and never had been mere judicial deterrence of police misconduct. The rule was rather a means of enforcement necessary to give content to the guarantees of the fourth amendment, and deterrence was only a secondary benefit.

Since *Calandra,* the United States Supreme Court has, because of the prevailing view on that Court that the exclusionary rule is a judicial remedy and not itself a constitutional requirement, created several significant exceptions to it. *See United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984); *Nix v. Williams,* 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984). Thus, the significant questions which must be answered by state courts considering independent state exclusionary rules are "(1) whether the state courts consider the exclusionary rule to be a constitutional requirement; (2) whether state courts view deterrence as the only purpose behind the rule; and (3) which governmental officials are deemed to be the target of this deterrence." Note, *The Future of the Exclusionary Rule and the Development of State Constitutional Law,* 1987 Wis.L.Rev. 377, 386. The case before us today does not raise any of these questions, nor have they been briefed or argued for this court. We therefore say nothing about the nature of the exclusionary rule (constitutional requirement versus judicial remedy) pursuant to article I, section 14 of the Utah Constitution. We simply hold that it exists.

We are persuaded that the exclusion of the VIN from evidence in this case might well have changed the outcome; although the State had other evidence of the theft, the jury might not have found it convincing without the VIN. Therefore, we reverse and remand this case for a new trial. That result makes it unnecessary for us to treat additional issues raised in this appeal.

ZIMMERMAN, J., concurs.

STEWART, J., concurs in the result.

HOWE, Associate Chief Justice (dissenting):

I dissent. I would affirm both convictions for the reasons expressed by the court of appeals in its opinion, *State v. Larocco,* 742 P.2d 89 (Utah Ct.App.1987). A majority of that court, relying on *New York v. Class,* 475 U.S. 106, 106 S.Ct. 960, 89 L.Ed.2d 81 (1986), held that the opening of the car door to check the VIN on the doorjamb in the instant case was not an unreasonable search. Judge Billings, relying on *California v. Carney,* 471 U.S. 386, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985), came to the same conclusion.

In *Class,* the Court emphasized the many purposes served by the VIN:

> The VIN is a significant thread in the web of regulation of the automobile. See generally 43 Fed.Reg. 2189 (1978). The ease with which the VIN allows identification of a particular vehicle assists the various levels of government in many ways. For the federal government, the VIN improves the efficacy of recall campaigns, and assists researchers in determining the risks of driving various makes and models of automobiles. In combination with state insurance laws, the VIN reduces the number of those injured in accidents who go uncompensated for lack of insurance. In conjunction with the State's registration requirements and safety inspections, the VIN helps to ensure that automobile operators are driving safe vehicles. By making automobile theft more difficult, the VIN safeguards not only property but also life and limb. See 33 Fed.Reg. 10207 (1968) (noting that stolen vehicles are disproportionately likely to be involved in automobile accidents).

*Class,* 475 U.S. at 111, 106 S.Ct. at 964, 89 L.Ed.2d at 88–89. The Court pointed out that one has a lesser expectation of privacy in a motor vehicle on the public highway than one does in his or her home. "[I]ts

function is transportation and it seldom serves as one's residence or as the repository of personal effects." 475 U.S. at 112–13, 106 S.Ct. at 965, 89 L.Ed.2d at 89 (quoting *Cardwell v. Lewis*, 417 U.S. 583, 590, 94 S.Ct. 2464, 2469, 41 L.Ed.2d 325, 335 (1974) (plurality opinion)). The Court then noted that the factors which generally diminish the reasonable expectation of privacy in automobiles are applicable *a fortiori* to the VIN. "A motorist must surely expect that such regulation will on occasion require the State to determine the VIN of his or her vehicle, and the individual's reasonable expectation of privacy in the VIN is thereby diminished." 475 U.S. at 113, 106 S.Ct. at 965, 89 L.Ed.2d at 90.

In *Class*, after an automobile had been stopped for a traffic violation and the driver had exited, an officer opened the door to examine the VIN on the doorjamb. When he did not find it there, he reached into the interior of the car to move some papers obscuring the area of the dashboard where the VIN is located in later-model automobiles. In doing so, he saw the handle of a gun protruding from underneath the driver's seat. The driver was charged with criminal possession of a weapon, and the issue arose whether the intrusion into the car which turned up the weapon was legal. The Court held that it was legal under the fourth amendment.

In the instant case, a majority of our court of appeals followed *Class* to conclude that the search was valid. The automobile was parked unlocked on a public street, which militates against any expectation of privacy in the VIN. The court pointed out that the intrusion was minimal; officers only opened the door and recorded the VIN. They did not search the interior of the car, and the inspection was much less intrusive than that allowed in *Class*, which permitted entry into the interior. The opening of the car door here did not lead to the discovery of an illegal article as in *Class;* nothing was found which served to incriminate defendant other than the VIN. The officer had probable cause to believe that the automobile was stolen—a fact not present in *Class*, which was the primary basis of the dissenting opinions in that

case. This most minimal intrusion to inspect the VIN on the doorjamb (and not elsewhere) for perhaps its most important purpose, i.e., to assist in the detection of stolen automobiles, does not offend the fourth amendment under either the majority opinion or the dissenting opinions in *Class* or the opinion in *California v. Carney*.

I similarly believe that the opening of the car door here did not violate article I, section 14 of the Utah Constitution. One important purpose of the VIN is defeated if it is clothed with constitutional protection under the facts of this case. To do so creates bad law and hampers the necessary regulation, control, and policing of nearly one million cars which traverse the public highways of this state every day.

HALL, C.J., concurs in the dissenting opinion of HOWE, Associate C.J.