Submitted on record and briefs May 17, 1984, reversed and remanded for new trial July 3, 1985

STATE OF OREGON,
*Respondent,*

*v.*

JACK EDWARD TURECHEK,
*Appellant.*

(83-719-M; CA A30543)

702 P2d 1131

David G. Cromwell, Grants Pass, filed the brief for appellant.

Dave Frohnmayer, Attorney General, James E. Mountain, Jr., Solicitor General, and Stephen F. Peifer, Assistant Attorney General, Salem, filed the brief for respondent.

Before Richardson, Presiding Judge, and Warden and Newman, Judges.

WARDEN, J.

## WARDEN, J.

Defendant appeals from his conviction for unlawful possession of a weapon. ORS 166.250. We reverse.

At about 3:30 a.m. on June 24, 1983, a Josephine County deputy sheriff saw a 1974 Ford pickup truck with Mississippi license plates in the parking lot of a tavern that had been closed for about an hour and a half. The pickup's engine was running, and its brake lights were on. The officer could see defendant's head and shoulders slumped over in the driver's seat. When the officer approached, he heard through the closed window that the heater fan was running at high speed. By tapping on the window he produced some response from defendant but did not arouse him fully. Another officer arrived shortly thereafter, and the two of them made enough noise to wake defendant.

Defendant appeared intoxicated. He was unable to explain coherently why he was in the parking lot or how long he had been there. He produced a California driver's license, a "special power of attorney" from a Clyde Daniels, giving him custody of the vehicle in the owner's absence, and a Mississippi vehicle identification document listing Daniels as the owner. From a records check, the officer determined that Daniels owned the pickup for which Mississippi had issued the license plates. The officer proceeded to check the pickup's vehicle identification number (VIN) to determine whether the plates were the ones issued for that vehicle. He checked the lower left windshield corner but did not find the VIN there. Because on most older model vehicles the VIN is placed on the doorjamb, the officer opened the door and found it there. It is unclear from the record whether the vehicle door may have been opened earlier in the encounter or whether defendant was inside the vehicle when the officer opened the door.

As he knelt to compare the VIN on the vehicle identification document with the pickup's VIN, the officer saw a speed loader[1] on the floorboard of the truck. It was in a leather case attached to a belt. The officer pulled it out and found a loaded .38 caliber revolver in a holster attached to the other end of the belt.

---

[1] A speed loader is a device that holds six cartridges and allows quick reloading of a revolver. Police officers in Josephine County carry them as standard equipment.

Defendant's argument for suppression of the revolver is that the officer

"had no reason to believe that the Defendant did not have the right to the possession of the vehicle nor did he have any reasonable suspicion that the vehicle had been stolen, that the Defendant had committed a crime or was committing a crime, did not have the Defendant's consent to enter the vehicle, that the only thing in plain sight after entering the vehicle was a leather case believed to be a speed loader holder, that the search of the automobile was impermissibly intrusive as set forth in *City of Portland v. Poindexter,* [38 Or App 551, 590 P2d 781 (1979)] and ORS 131.615, * * * that the speed loader was a legal object to be in a vehicle and was not closely enough associated with the possibility of a weapon to allow the officer to further search, and even if there were a reasonable suspicion or probable cause, the vehicle was impounded in any event and a search warrant could have been obtained."

The initial encounter between the officer and defendant required no justification. There was no "restraint of the citizen's liberty" requiring justification by reasonable suspicion of criminal activity, *State v. Warner,* 284 Or 147, 161, 585 P2d 681 (1978), because defendant was already stopped and was restrained from leaving by his own physical incapacity. The primary issue presented is whether the officer's opening of the pickup door to examine the VIN was a search within the meaning of either the Fourth Amendment to the United States Constitution or Article I, section 9, of the Oregon Constitution.

According to *United States v. Polk,* 433 F2d 644, 647 (5th Cir 1970), opening a car door to inspect the VIN is not a search for purposes of the Fourth Amendment:

"Vehicle identification numbers are put on automobiles by the manufacturers to aid in identifying the vehicles. There are so many similar cars that individual vehicles can be identified only through the use of such individual numbering. State laws contain many requirements for disclosing and recording such VIN's, showing a generally accepted mode of disclosure and the lack of any reasonable expectation of privacy with respect to the numbers.

"Most states require that automobiles be registered with a state agency to establish a record of car ownership. The registration, which must be carried in the car, identifies the car by its VIN. These requirements proceed from a purpose to

keep track of the ownership of potential instruments of personal and property injury, so that drivers in automobile accidents can be traced and so that compulsory insurance requirements can be enforced. Additionally, the state seeks to protect ownership rights in these mobile and expensive assets. * * *

"* * * * *

"VIN's are typically disclosed to private parties also. Automobile purchase and sale documents usually identify the car by its VIN. Automobile insurance policies also identify cars by their VIN's. There can therefore be no reasonable expectation of privacy with respect to the identity of the VIN. Opening the car door, looking under the hood, or crawling under the car to inspect the rear axle does not independently bring an inspection of the VIN within the scope of the Fourth Amendment."

We do not agree with that reasoning. As the Washington Supreme Court recognized in *State v. Simpson,* 95 Wash 2d 170, 184, 622 P2d 1199 (1980), "The degree of privacy interest in the part of the vehicle where the VIN is located is a separate question from the extent of privacy interest in the serial number itself." That case held it a violation of both the United States and Washington Constitutions for the police to use a key lawfully in their possession after the defendant's arrest to open the locked door of a truck and inspect its VIN. The court said that, "although respondent did not have a legitimate expectation of privacy in the VIN itself, he had a legitimate expectation that other people would not break open the locked door of the truck in order to view that VIN." 95 Wash 2d at 188.

Although we find the reasoning in *State v. Simpson, supra,* more persuasive, we need not squarely reject the Fifth Circuit's interpretation of the federal constitution in *Polk.* Defendant's brief seems to assert violations of both the federal and state constitutions. Under the principles laid down in *State v. Kennedy,* 295 Or 260, 666 P2d 1316 (1983), we decide questions of state law first.

■■ We hold that the officer conducted a search within the meaning of Article I, section 9, of the Oregon Constitution when he opened the door to inspect the VIN. The protection of Article I, section 9, extends to "effects," among which defendant's pickup is surely included. Moreover, the officer had no

reason to believe that the vehicle was stolen, so the search may not be justified under a theory of probable cause and exigent circumstances or as incident to an arrest for possession of a stolen vehicle. *See State v. Messer,* 71 Or App 506, 692 P2d 713 (1984). The weapon should have been suppressed.

■ Defendant also argues that the trial court erred in refusing to acquit him on the ground that the officer's failure to test fire the revolver prevented the state from proving that the revolver was "readily capable of use as a weapon," ORS 166.210(1), and therefore prevented the state from proving a material element of unlawful possession of a weapon. The officer testified, however, that when he tested the revolver at the station it "cycled through," the firing pin was connected and all parts necessary to fire the revolver worked. Defendant was not entitled to a judgment of acquittal.

Reversed and remanded for a new trial.