Argued and submitted July 31, reversed and remanded for new trial
October 11, 2000

# STATE OF OREGON,
*Respondent,*

*v.*

# JERRY EDWARD FINLAY,
*Appellant.*

(97C20779; CA A102256)

12 P3d 999

Andy Simrin, Deputy Public Defender, argued the cause for appellant. With him on the brief was David E. Groom, Public Defender.

Laura S. Anderson, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Haselton, Presiding Judge, and Wollheim, Judge, and Warren, Senior Judge.

HASELTON, P. J.

**HASELTON, P. J.**

Defendant appeals from his conviction, following a stipulated facts trial, of burglary in the second degree, ORS 164.215, and theft in the first degree, ORS 164.055. Defendant assigns error to the trial court's denial of his motion to suppress and argues, *inter alia*, that one of the investigating officers effected an unlawful seizure and search in ordering defendant to get out of his car and then viewing the car's interior through the open door, which, in turn, yielded evidence of the crimes. We reverse and remand.

Except as specifically noted, the following facts are uncontroverted. At about 11:00 on the morning of May 25, 1997, Stayton Police Officer Jim Krieger received a dispatch that an unidentified informant had called 9-1-1 to report that a car was driving erratically near Sublimity. The caller described the car and gave its license plate number, and a records check showed that the car was registered to defendant. Krieger waited for the car, saw it run a stop sign, and then made a traffic stop based on that infraction. Krieger asked defendant, who was driving, for his license, registration, and proof of insurance, and then ran another records check, which confirmed that the car was registered to defendant.

Krieger then returned defendant's documents, issued defendant a citation for failing to obey a traffic control device, ORS 811.265, and told defendant that he was free to leave. However, defendant agreed to remain to speak with Krieger about the 9-1-1 complaint of erratic driving[1] and, in

---

[1] The sequence is somewhat unclear, but the trial court found:

"After serving the defendant with the citation, Krieger clearly informed him he did not have to remain at the scene of the stop. However, defendant agreed to remain there so officer Krieger could investigate further the citizen's report of the reckless and intoxicated operation of the vehicle. Before pursuing that investigation Krieger returned to his patrol car, turned off his overheads, confirmed with Stayton dispatch that a backup officer would be there in minutes and then recontacted the defendant and his passenger, both of whom had remained seated in the vehicle."

the ensuing discussion, acknowledged that he had been driving erratically due to mechanical problems. During that conversation, defendant and his passenger remained seated in the car.

As Krieger and defendant spoke, Sergeant Stai of the Marion County Sheriff's Office arrived to provide backup. After Stai arrived, Krieger asked defendant if he would consent to a search of his car, and, when defendant refused, Krieger walked away to confer with a third officer. Meanwhile, Stai, who had been standing on the passenger side of defendant's car, noted that the door lock on the passenger door was completely missing, as if it had been "punched out." Based on his experience investigating stolen vehicles, Stai became curious and suspicious that the car might be stolen: "[T]hat got my suspicions up and my curiosity and concern."

Stai, who was unaware that Krieger had already confirmed defendant's registration, asked defendant for his registration. After defendant complied, Stai then attempted to compare the Vehicle Identification Number (VIN) on the registration with the VIN on the car's dashboard by looking through the windshield, but was unable to see clearly. Stai then "advised the two occupants that I wanted them to step from the vehicle so that I could check the federal trade sticker on the driver's door post, which would be another location for a VIN."[2]

After defendant and his passenger opened their doors and got out, Stai bent down to examine the now-visible VIN sticker on the driver's-side door post. From that vantage point through the open door, Stai saw a stack of credit cards on the center console. Stai's "suspicions were aroused because people don't normally carry credit cards unprotected, or unconcealed I should say." Stai asked defendant and his passenger whether the cards were theirs, and both denied any ownership of them. Stai then seized the cards, which proved to have been stolen during the theft and burglary with which defendant was subsequently charged. In the ensuing search of defendant's car, police found other items,

---

[2] The trial court found that Stai "*had* defendant and his passenger step out of the vehicle." (Emphasis added.)

including checks, a baseball autographed by Barry Bonds, and baseball caps, all of which had been stolen, like the credit cards, from the offices of the Salem-Keizer Volcanoes.

Before trial, defendant moved to suppress the items, including the credit cards, found in the car. Defendant argued, in part, that Stai, upon ordering defendant and his passenger out of the car, effected an unlawful seizure and, in inspecting the vehicle's interior from the vantage point of the consequently revealed driver's-side doorpost, Stai effected a search without probable cause. The trial court rejected those contentions:

"4.  Defendant had no constitutional right to remain in the car during the course of the stop and it is immaterial that the reason Stai had defendant step out of the car was for a suspected crime different from the offenses Krieger was investigating.

"5.  Sergeant Stai's squatting in the 'V' of the open door to examine the VIN on the door frame was not a search because there was no physical trespassory invasion of the interior of the defendant's car, and certainly his examination of the VIN was not an unreasonable search because the VIN is placed there in order to be visible for inspection. It violated no privacy interest defendant was entitled to have in the VIN.

"6.  The credit cards were in the plain view of Sergeant Stai from his position within the open car door and Sergeant Stai was lawfully in that location when he observed them.

"7.  Defendant has not asserted any possessory, ownership or other protected interest in the cards seized or otherwise presented evidence of such an interest in them, he therefore cannot object to their seizure."

Defendant was subsequently convicted of burglary in the second degree and theft in the first degree.

■    On appeal, as before the trial court, defendant asserts that suppression was required for a variety of reasons.[3] However, because it is dispositive, we address only

---

[3] Defendant argues, for example, that: (1) he continued to be detained after Krieger told him that he was free to go, rendering Krieger's subsequent inquiries beyond the scope of the stop; and (2) even without reference to any other illegality, Stai's seizure of the credit cards was without probable cause and, hence, unlawful.

defendant's argument that Stai acted without probable cause in ordering defendant and his passenger out of the car so that he could inspect the VIN and, consequently, in observing the car's interior through the open driver's side door.

We begin by emphasizing the essential factual predicate for the analysis that follows: Stai *ordered* defendant and his passenger to get out of the car so that he could inspect the doorpost VIN. Thus, this is not a case in which the investigating officer merely "asked" if the defendant would be willing to leave his vehicle or sought, and received, consent to search. *See, e.g., State v. Berg,* 140 Or App 388, 391, 914 P2d 1110 (1996) (officer was acting within his authority when he had reasonable suspicion that defendant was driving under the influence of intoxicants and "asked defendant to get out of his car, and defendant consented to do so"). Rather, as the trial court found, Stai "*had* defendant and his passenger step out of the vehicle."[4] (Emphasis added.) That comports with Stai's testimony that he "advised the two occupants that I wanted them to step from the vehicle" and that he told defendant and his passenger, "I need to have you step from the vehicle."

■ Stai had no lawful basis to order defendant and his passenger from the car so that he could inspect the doorpost VIN. That is, Stai compelled defendant to open the car door to reveal that which was otherwise concealed. That was an unlawful search. Even assuming, without deciding, that Stai reasonably suspected that the car had been stolen,[5] mere reasonable suspicion does not support a warrantless search.[6]

---

[1] As noted, 170 Or App at 363, the trial court, in its legal conclusions, similarly stated that Stai "had defendant step out of the car" and that "Defendant had no constitutional right to remain in the car during the course of the stop."

[5] Defendant argues that Stai could not have such a reasonable suspicion because, under the "collective knowledge" doctrine, Krieger's confirmation that the car was registered to defendant must be imputed to Stai. *See, e.g., State v. Soldahl,* 157 Or App 578, 584, 972 P2d 898 (1998), *rev allowed* 328 Or 666 (1999) (describing doctrine). Given our disposition, we need not resolve that matter.

[6] The state's reliance on *State v. Rhodes,* 315 Or 191, 843 P2d 927 (1992), is unavailing. In *Rhodes,* the court concluded that an officer, who had reasonable suspicion of DUII, could open the door of a truck in order to rouse and attract the attention of the "apparently somnolent" driver. *Id.* at 200. The court held that the officer's action was justified as a reasonable precaution to protect his own and the defendant's safety. *Id.* ("Because defendant was slumped over in the seat of the pickup * * * and because of the officer's reasonable and articulated fear of a sudden

There was no probable cause. *See State v. Turechek*, 74 Or App 228, 232-33, 702 P2d 1131 (1985) (inspection of VIN after opening pickup's door was search; weapon that officer observed on floor board of truck while inspecting VIN must be suppressed because, *inter alia*, "the search may not be justified under a theory of probable cause and exigent circumstances"). Nor was there any other lawful justification for Stai's intrusion here.[7]

Stai observed the credit cards on the console from the vantage point of inspecting the VIN. The state did not argue—and the trial court did not find—that the cards would otherwise have been in plain view from outside the car. Thus, the discovery of the cards was the direct product of the unlawful intrusion. *See Turechek*. Finally, and contrary to the state's contention, defendant could assert a privacy interest in the interior of his car and its contents notwithstanding his disclaimer to Stai of a proprietary interest in the credit cards. *See State v. Morton*, 326 Or 466, 469-70, 953 P2d 374 (1998); *State v. Knox*, 160 Or App 668, 672-73, 984 P2d 294, *rev den* 329 Or 527 (1999).

The trial court erred in denying defendant's motion to suppress.

Reversed and remanded for a new trial.

---

and dangerous reaction by defendant if he were roused by a knock on the window, the officer's choice in opening the door in order to get defendant's attention was a reasonable one."). Nothing in *Rhodes*, or in any subsequent decision by the Supreme Court or this court, suggests that, depending on the level of intrusiveness of a search, an officer may proceed on something less than probable cause.

[7] At oral argument on appeal, the state, for the first time, suggested that Stai's conduct could be sustained as arising from officer safety concerns. We do not consider that new and qualitatively different alternative ground for affirmance because, if that matter had been raised below, it "might well have affected the development of the evidentiary record." *See State ex rel Juv. Dept. v. Pfaff*, 164 Or App 470, 478, 994 P2d 147 (1999) (quoting *Griffith v. Blatt*, 158 Or App 204, 210, 973 P2d 385 (1999), *rev allowed* 329 Or 650 (2000)).