Argued and submitted October 18, 2018, reversed and remanded May 13, 2020

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## PHILIP ANTHONY GATTO III,
*Defendant-Appellant.*

Washington County Circuit Court
16CR45834; A164144

466 P3d 981

In this criminal case, defendant assigns error to the trial court's denial of his motion to suppress evidence obtained following a warrantless search of his hotel room. Defendant asserts that, under Article I, section 9, of the Oregon Constitution, he retained a privacy interest in the hotel room because he had not relinquished control of the room. The state remonstrates that the trial court implicitly found that defendant had checked out of the hotel and, therefore, did not have a privacy interest in the hotel room at the time the police entered the room. *Held*: The trial court erred in denying defendant's motion to suppress the evidence found in defendant's hotel room and all evidence subsequently derived from that search because defendant maintained a possessory and privacy interest in the hotel room at the time police entered the room. The test for actual abandonment under Article I, section 9, is whether defendant's statements and conduct demonstrated that he relinquished all constitutionally protected interests in the room. Although the trial court found that the hotel staff believed defendant checked out, that finding—without more—does not aid the state in meeting its burden to show that defendant's statements and conduct manifested an intent to relinquish control of his hotel room.

Reversed and remanded.

Janelle F. Wipper, Judge.

Joshua B. Crowther argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

David B. Thompson argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General and Benjamin Gutman, Solicitor General.

Before Ortega, Presiding Judge, and Egan, Chief Judge, and Powers, Judge.*

_____

* Egan, C. J., *vice* Garrett, J. pro tempore.

POWERS, J.

Reversed and remanded.

**POWERS, J.**

In this criminal case, defendant appeals from a judgment of conviction for three counts of aggravated identity theft, ORS 165.803, two counts of identity theft, ORS 165.800, resisting arrest, ORS 162.315, and theft in the second degree, ORS 164.045. Defendant assigns error to the trial court's denial of his motion to suppress evidence obtained following a warrantless search of his hotel room. Defendant asserts that, under Article I, section 9, of the Oregon Constitution, he retained a privacy interest in the hotel room because he had not relinquished control of the room. The state remonstrates that the trial court implicitly found that defendant had checked out of the hotel and, therefore, did not have a privacy interest in the hotel room at the time the police entered the room. For the reasons explained below, we agree with defendant's position, and, accordingly, we reverse and remand.

We review the trial court's denial of a defendant's motion to suppress for legal error and are bound by the trial court's findings of fact if there is constitutionally sufficient evidence in the record to support those findings. *State v. South*, 300 Or App 183, 184, 453 P3d 592 (2019), *rev den*, 366 Or 259 (2020). In the absence of an express factual finding, we presume that the trial court found facts consistent with its ultimate conclusion. *Id*. We will not, however, "presume an implicit finding where the record does not support it" or where the record "shows that such a finding was not part of the trial court's chain of reasoning forming the basis of its ultimate legal conclusion." *State v. Adams*, 302 Or App 730, 738, 462 P3d 761 (2020). We set out the facts consistent with those standards.

Defendant reserved a hotel room in Tigard from July 20, 2016, until July 22, 2016.[1] On the morning of July 22, a hotel employee noticed that her purse was missing from housekeeping's laundry room and reported it to the hotel's operations manager. The operations manager, along with the general manager, reviewed the hotel's surveillance

---

[1] Police later learned, weeks after the challenged search, that defendant reserved the hotel room by using a stolen credit card.

video and observed an unknown individual enter the laundry room and walk out with the employee's purse.

A little before 8:00 a.m., Tigard police officers responded to the hotel to investigate the stolen purse. Shortly after the officers arrived, hotel staff directed Officer Pastore's attention to two individuals that, according to hotel staff, were loading their bags into a white Ford Focus and seemed to be leaving the hotel in a hurry. Pastore went to look at the individuals in the parking lot and made note of the Ford Focus, because it was parked in a handicap spot but did not otherwise connect the individuals to the stolen purse. He then proceeded to watch the surveillance video of the theft, took some images of the surveillance footage, and left to write up a police report. At the suppression hearing, the operations manager testified that he had seen the same individuals leave room 102, the room later associated with defendant. The operations manager explained that the individuals were carrying bags and appeared to be in a hurry, because they left "quicker than normal to the exit."

The general manager and operations manager suspected that the individuals who left room 102 had something to do with the missing purse. Although it was almost three hours before the noon check-out time and there was no indication that the occupants of room 102 had formally checked out, the hotel staff entered the room to search for the purse. The staff believed that the occupants had checked out of the hotel, because they had observed the individuals leave with bags and drive away.[2] Inside the room, hotel staff found several items: a brand-new vacuum; a brand-new set of pots and pans; a new-looking pair of shoes; a laminated paper that appeared to have several credit card numbers; and a receipt from another hotel nearby. Believing that the items looked suspicious, hotel staff again called the police to investigate.

---

[2] The operations manager testified that the hotel has a noon check-out time and guests can check out in a variety of ways. Guests can notify hotel staff that they are checking out by calling or going to the front desk; alternatively, guests can simply leave without notifying the hotel. As noted above, defendant did not notify the hotel that he checked out of room 102; rather, hotel staff acted on their belief that defendant had checked out of the room before the noon check-out time.

When the police arrived at the hotel a second time, one of the managers told the officers that the individuals in room 102 had checked out. Relying on that information, the officers entered defendant's hotel room. Pastore later testified at the suppression hearing that, had he received information that the occupants of the room had not checked out, he would not have entered the room and would have obtained a warrant. Along with the various items identified by the hotel staff, Pastore also found a bill for the room with defendant's name on it, a number of clear, printable labels with credit card numbers and names of people, and a piece of paper with an additional credit card number written on it. Pastore seized the items as potential evidence of forgery or fraud. Because the receipt found from the other hotel indicated that the check-out day for that hotel had been two days prior, Pastore concluded that it was likely that the occupants of room 102 had also previously stayed there as well. Pastore decided to drive to the other hotel to further investigate potential forgery and fraud.

At the second hotel, Pastore found the same white Ford Focus in the parking lot and recognized that the passenger in the car—defendant—was the same person that Pastore had seen on the surveillance video at the first hotel. Pastore eventually arrested defendant and found, among other items, two hotel keys to room 102 in defendant's possession along with other incriminating evidence in the Ford Focus.

At trial, defendant moved to suppress the evidence found in the hotel room, as well as any derivative evidence from the search, under Article I, section 9, and the Fourth Amendment to the United States Constitution. Defendant argued that, given that it was well before the hotel's checkout time, defendant retained a privacy interest in the room. Additionally, defendant asserted that hotel staff had no authority to consent to a search. The state countered that the search was reasonable because the hotel staff believed that defendant had checked out, which had the legal effect of abandoning his privacy interest in the room. Therefore, the hotel staff had authority to consent to a search of the

hotel room.[3] The trial court denied defendant's motion to suppress, concluding that—regardless of whether defendant had checked out—the hotel staff believed that defendant had checked out, relayed that information to the officers, and the officers acted under the belief that defendant no longer had an expectation of privacy in the room. Ultimately, the trial court found defendant guilty on all counts.

On appeal, defendant challenges the trial court's ruling on his motion to suppress by renewing his argument that he did not abandon his privacy interest in the hotel room. Defendant contends that, because the search occurred before the hotel's check-out time, "he never expressly disavowed his possessory interest in the room." In particular, defendant points out that he still had personal items in the hotel room. Defendant further argues that the warrantless search did not fall under the consent exception to the warrant requirement. The state, on the other hand, contends that defendant's rights under Article I, section 9, were not implicated when police entered the hotel room, because the trial court implicitly found that defendant had checked out of the room. Specifically, the combination of hotel staff observing individuals leave the hotel room with their bags and then drive away, along with the nature of the items left behind in the room, supported a reasonable conclusion that defendant had checked out and abandoned any privacy interest in the hotel room.[4]

_____

[3] At trial, the state also argued that defendant retained no privacy interest in the room because he used a fraudulent credit card to obtain the room and that the police would have inevitably discovered the evidence. The state does not meaningfully pursue either of those arguments on appeal; therefore, we do not address them.

[4] At oral argument, the state also asserted that, because the hotel staff entered and searched the hotel room before notifying police, the hotel staff's actions constituted a private search, and therefore, the subsequent search of the room by police was not an unlawful search under Article I, section 9. *See State v. Stokke*, 235 Or App 477, 480, 237 P3d 829, *rev den*, 349 Or 370 (2010) (concluding that any protected privacy interest that the defendant had in the contents of a hotel safe had been extinguished by hotel employees' actions). Although the state raised a private-search argument during the suppression hearing, the state did not advance that argument in its answering brief. Accordingly, that argument is not properly presented on appeal. *See Colton and Colton*, 297 Or App 532, 547-48, 443 P3d 1160 (2019) ("We do not consider appellate arguments—even if properly preserved—that are made on appeal for the first time during oral argument."). Further, to the extent that the state cites to a case in its memorandum of additional authorities that discusses a private search extinguishing any

As an initial matter, the parties' arguments presume—as we do—that defendant had a constitutionally protected possessory and privacy interest in the hotel room prior to the hotel staff believing defendant had checked out. The state argues that, because defendant's actions demonstrate that he had checked out and abandoned the room, defendant no longer had a privacy interest in the hotel room at the time police entered the room. Therefore, we understand the state to advance an actual abandonment argument on appeal and do not understand it to be advancing an argument that it was reasonable for police to believe that defendant had checked out of the room.[5] Thus, whether the warrantless search of defendant's hotel room was lawful turns on whether defendant abandoned his constitutionally

---

protected privacy interest, the state's argument is not properly raised on appeal. *See State v. Lobo*, 261 Or App 741, 747 n 2, 322 P3d 573, *rev den*, 355 Or 880 (2014) (explaining that "a memorandum of additional authorities is not a proper vehicle in which to advance arguments that were not made in defendant's opening or reply briefs"); ORAP 5.85(2) (providing that a memorandum of additional authorities "[s]hall include citations to relevant cases and statutes and shall identify the issue that has been previously briefed to which the new citations apply").

[5] In *State v. Brown*, 273 Or App 347, 352 n 4, 359 P3d 413 (2015), we noted the development of two different formulations for abandonment, *viz.*, actual or apparent abandonment:

"In [*State v.*] *Cook*, [332 Or 601, 34 P3d 156 (2001),] the court stated that the test for abandonment is whether the 'defendant's statements and conduct demonstrated that he relinquished all constitutionally protected interests' in the property searched by police. *Cook*, 332 Or at 608. However, in determining whether the property at issue in that case had been abandoned, the court applied a slightly different test, evaluating whether the searching officers had reasonably concluded that the defendant had abandoned that property. That is, the court examined whether the defendant's statements and conduct *made it reasonable for officers to conclude that the defendant had relinquished all constitutionally protected interests* in the property at issue. *Id.* at 608-09. In [*State v.*] *Brown*, [348 Or 293, 232 P3d 962 (2010),] the court, quoting *Cook*, reiterated and then applied the first formulation of the test, but did not analyze or mention the second formulation. *See Brown*, 348 Or at 302-05. The difference between the two formulations is potentially significant. The first appears to require that the state demonstrate actual abandonment; the second seems to require that the state demonstrate apparent abandonment."

(Emphasis in original.) In this case, because the parties on appeal have framed the issue under the first formulation—focusing on whether defendant actually abandoned any interest in the hotel room—we do not address the applicability of the second formulation regarding apparent abandonment. *See, e.g.*, *In re Fadeley*, 342 Or 403, 406 n 2, 153 P3d 682 (2007) (declining to reach merits of undeveloped constitutional claims because "neither is sufficiently developed for review"); *State v. Montez*, 309 Or 564, 604, 789 P2d 1352 (1990) (refusing to address a constitutional claim because "a thorough and focused analysis" was not presented on review).

protected possessory and privacy interests in the hotel room at the time police entered and searched the room.

Article I, section 9, provides that, "[n]o law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure[.]" A "search" for purposes of Article I, section 9, occurs when the government "invades a protected privacy interest"; that is, not the privacy interest "that one reasonably expects but the privacy to which one has a right." *State v. Brown*, 348 Or 293, 297-98, 232 P3d 962 (2010) (quoting *State v. Campbell*, 306 Or 157, 164, 759 P2d 1040 (1988) (emphasis omitted)).

An individual's rights under Article I, section 9, are not violated "if that person abandons his or her possessory or privacy interests in an item before it is searched." *State v. Jones*, 280 Or App 135, 138, 380 P3d 1132 (2016). "Abandonment is a voluntary relinquishment of possessory and privacy interests in an article of property that necessarily involves both legal and factual questions." *State v. Knox,* 160 Or App 668, 675, 984 P2d 294, *rev den*, 329 Or 527 (1999) (internal quotation marks omitted). To determine whether a defendant abandoned his or her possessory or privacy interest, we look to "whether the defendant's statements and conduct demonstrated that he [or she] relinquished all constitutionally protected interests in the articles of property." *State v. Cook*, 332 Or 601, 608, 34 P3d 156 (2001). That is, the state must prove facts to support the conclusion that the defendant's statements and conduct manifested an intent to abandon his or her constitutionally protected interests. *See State v. Voyles*, 280 Or App 579, 584, 382 P3d 583, *rev den*, 360 Or 751 (2016) (stating that, when the state seizes evidence in a warrantless search, "the state has the burden to prove by a preponderance of the evidence that the search was legal and did not violate Article I, section 9").

In this case, the state failed to meet its burden to show that defendant manifested an intent to abandon his constitutionally protected interest in the hotel room. To the extent that the state argues that "the trial court implicitly found that [defendant] *** had checked out," and that we should adhere to that finding, we disagree. In ruling on

defendant's motion to suppress, the trial court explicitly declined to find that defendant had checked out. The trial court, instead, concluded that it did not need to decide that factual issue. The trial court explained:

> "[N]o one knows if [defendant] had actually fully intended to check out of the room at that early hour. Frankly, it doesn't matter, given the fact that the hotel employees believed that he had, told the officers that he had, and based on that, the officers acted.
>
> "*****
>
> "We have a situation in this particular case where the officers believed, based on the hotel employee's representation to them that they had checked out and had no expectation of privacy in that room anymore and acted accordingly.
>
> "Therefore, I am denying the motion to suppress."

We do not understand the trial court's ruling as an implicit finding that defendant checked out. Instead, in denying defendant's motion to suppress, the only finding that the trial court made was that, given the hotel staff's representations to the police, the officers believed that defendant had checked out of the hotel room.[6] Therefore, we cannot presume an implicit finding, because it was not necessary to the trial court's ruling. *See, e.g.*, *Pereida-Alba v. Coursey*, 356 Or 654, 671, 342 P3d 70 (2015) ("If an implicit factual finding is not necessary to a trial court's ultimate conclusion or is not supported by the record, then the presumption [under *Ball v. Gladden*, 250 Or 485, 487, 443 P2d 621 (1968)] does not apply."); *State v. Jackson*, 296 Or 430, 440, 677 P2d 21 (1984) (declining to attribute an implicit factual finding to a trial court when that court "never made any conclusions" regarding that factual issue (emphasis omitted)). Moreover, because the test for actual abandonment under Article I, section 9, is

---

[6] In announcing its decision, the trial court explained that it was distinguishing this case from *Stoner v. California*, 376 US 483, 84 S Ct 889, 11 L Ed 2d 856 (1964), a Fourth Amendment case analyzing whether a hotel guest maintained an expectation of privacy in a hotel room. Given the trial court's analysis of *Stoner*, we do not understand the trial court to be making a ruling on the apparent abandonment formulation under Article I, section 9, discussed above. Moreover, because the parties have framed the issue on appeal on whether defendant actually abandoned any interest in the hotel room, we do not address the applicability of any apparent abandonment argument.

whether defendant's statements and conduct demonstrated that he relinquished all constitutionally protected interests in the room, not whether it was reasonable for police to conclude that defendant abandoned the room, the trial court's finding that the hotel staff believed defendant checked out does not aid the state in meeting its burden to show that defendant's statements and conduct manifested an intent to relinquish control of his hotel room.

In this case, the state places significant weight on the fact that hotel staff observed two individuals leaving defendant's hotel room with bags, loading their bags in the car, and driving away. Although such actions may be one indication that a hotel guest intends to check out of a hotel and relinquish her or his room, those actions do not necessarily suggest that a guest has checked out. For example, it is not uncommon for guests to pack their car, to leave for breakfast or to attend a morning meeting, and then to return to their room before checking out for the day. Particularly when, as in this case, a guest leaves a room well before the hotel's check-out time, it cannot be said that the guest has—without more—abandoned a privacy interest in the hotel room.

Here, apart from walking away from the hotel room with some bags shortly before 8:00 a.m., defendant made no statements or other actions to suggest that he was relinquishing control of the room. *See State v. Brown*, 273 Or App 347, 353, 359 P3d 413 (2015) (concluding that, because the defendant's "act of leaving the bag in the parking lot [and walking away] was not accompanied by any words or conduct indicating that he intended to leave the bag behind," the defendant had not relinquished his interests in that property). On the contrary, defendant never expressly conveyed to the hotel that he was checking out, defendant left several items in the room that one might expect someone to come back for, and defendant still had two keys to room 102 with him. Under those circumstances, we conclude that the state did not offer sufficient evidence to permit the legal conclusion that defendant actually abandoned his constitutionally protected interest in the hotel room. Therefore, we hold that defendant maintained a possessory and privacy interest in the hotel room at the time police entered the room.

Accordingly, the trial court erred in denying defendant's motion to suppress the evidence found in defendant's hotel room and all evidence subsequently derived from that search.

Reversed and remanded.