Argued and submitted February 12, 2019, reversed and remanded
November 25, 2020

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JOSE LUIS DORADO, JR.,
*Defendant-Appellant.*

Washington County Circuit Court
17CR34443; A166427

477 P3d 1209

Defendant appeals from a judgment of conviction for multiple crimes stemming from an early morning hit-and-run accident. He argues that the trial court erred in denying his motion to suppress, arguing that the investigating officer conducted a warrantless search that was not justified by any exception to the warrant requirement. Specifically, defendant argues that the officer's directive to "open the door" of his residence was an unconstitutional search under Article I, section 9, of the Oregon Constitution and that evidence obtained as a result of the search should be suppressed. *Held*: The trial court erred in denying defendant's motion. The officer had no lawful basis to direct defendant to open the door so that the officer could further his investigation. That directive, followed by defendant's acquiescence or compliance, amounted to a search. And, because the state offers no justification for the officer's directive, the trial court erred in denying the motion to suppress.

Reversed and remanded.

James Lee Fun, Jr, Judge.

Mike De Muniz argued the cause for appellant. Also on the brief was Sherlag De Muniz, LLP.

Christopher A. Perdue, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Powers, Presiding Judge, and Lagesen, Judge, and Brewer, Senior Judge.

POWERS, P. J.

Reversed and remanded.

**POWERS, P. J.**

Defendant appeals from a judgment of conviction for driving under the influence of intoxicants (DUII), ORS 813.010; failure to perform the duties of a driver when property is damaged, ORS 811.700; reckless driving, ORS 811.140; and criminal mischief in the second degree, ORS 164.354, stemming from an early morning hit-and-run accident in Sherwood, Oregon. Defendant argues that the trial court erred by denying his motion to suppress, arguing that the investigating officer conducted a warrantless search that was not justified by any exception to warrant requirement. We reverse and remand.

We review the denial of a motion to suppress for legal error and, in so doing, we are bound by the trial court's factual findings if there is any constitutionally sufficient evidence in the record to support them. *State v. South*, 300 Or App 183, 184, 453 P3d 592 (2019), *rev den*, 366 Or 259 (2020). In the absence of an express factual finding by the trial court, we presume that the court found facts consistent with its ultimate conclusion. *Id*. That presumption, however, has its limits. That is, we will not presume an implicit finding where the record does not support it or where the record shows that such a finding was not part of the trial court's chain of reasoning forming the basis of its ultimate legal conclusion. *State v. Gatto*, 304 Or App 210, 212, 466 P3d 981 (2020). We recount the facts consistent with those standards.

Just after 3:00 a.m., Officer Smith responded to a hit-and-run complaint. Smith discovered a damaged truck parked on the street and a bumper from a different vehicle with a license plate that was left at the scene. Officers found the suspect vehicle, a Hyundai, just down the road from the accident. A motorcyclist slowly drove by the investigating officers looking at the Hyundai. Smith learned that the owner of the Hyundai, defendant, lived just over a mile away.

Approximately half an hour after beginning the investigation, Smith went to defendant's residence and saw a motorcycle similar to the one that drove by him at the accident scene. Smith noted that the motorcycle engine was still

hot and confirmed with dispatch that defendant was the registered owner of both the motorcycle and the Hyundai. Smith knocked on the front door of defendant's residence. Eventually, the lights turned on and a man peeked through the blinds. At that point, Smith said, "Open the door, Jose." After defendant opened the door, Smith asked, "Are you Jose?" Defendant said that he was and asked, "Where's my car?" Smith observed signs of impairment including red, watery, and bloodshot eyes, as well as a strong odor of alcohol. At this point, Smith believed he had probable cause to arrest defendant for DUII. Defendant eventually admitted to driving his motorcycle by the accident scene and drinking alcohol earlier, submitted to field sobriety tests, and took a breath test, which indicated that his BAC was .11 percent. Defendant was ultimately arrested for DUII and failure to perform duties of a driver.

At trial, defendant filed a motion to suppress evidence. He argued that Smith's directive to "open the door" was an unconstitutional search under Article I, section 9, of the Oregon Constitution and that evidence obtained as a result of the search should be suppressed.[1] Specifically, defendant noted, "I can't emphasize enough[,] I'm not arguing this was a stop. I'm arguing it was a search." Defendant argued that

> "ordering someone to open their door constitutes a search, because it put the officer in a position where he could obtain evidence that he could not obtain without the door becoming open. That's when he could smell the alcohol, that's when he could observe other bases that he said he relied on to develop probable cause for the arrest for [DUII]."

The state argued that the proper analysis was not whether or not a search has occurred, but rather whether Smith had stopped or seized defendant.

After hearing the parties' arguments, the trial court made its findings of fact, but did not directly address defendant's contention that defendant was searched. Defendant asked for clarification:

---

[1] Article I, section 9, provides, in part:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure[.]"

"[COUNSEL]: [O]ur next issue specifically was whether or not there was a search when the officer ordered [defendant] to open the door. I realize the Court is—I assume by your finding, denying that?

"THE COURT:   Yes.

"[COUNSEL]:   But I just want to make it clear that you are specifically holding that there was no search. Or are you saying that it was a search but it was justified in some way?

"THE COURT:   *** I'm saying the latter. There was a search and a seizure, I think. And whether or not it was an encounter or a stop I don't know makes any difference because at the point in time the officer develops probable cause to believe that the crime of [DUII] has occurred, when he's standing at the front door, he has the authority to arrest. ***

"[COUNSEL]:   And so is the Court saying *** that the officer had probable cause to arrest for [DUII] prior to ever having a conversation or prior to that door ever opening? That's what I'm trying to get clarification on. ***

"*****

"THE COURT:   *** [T]o be clear about this, no, the officer did not have probable cause before the conversation that occurred between the defendant and officer. And I suppose if the question is whether or not the officer has the permission to knock on the door in the first place, I would say yes. *** Once he knocks on the front door and the door is open, then the conversation that occurs from that point forward turns into probable cause.

"[COUNSEL]:   And so I just want to clarify, though, because my main point *** is that specifically it's not the knocking on the door, but it's the statement by the officer, 'Open the door, Jose,' that that is what constituted a search.

"And so I guess I just want to clarify *** is the Court saying that wasn't a search, period, or it was a search and—because it's—I'm not arguing it was just the knocking on the door made a difference one way or the other. I've been arguing that it's the direction, the order to open the door, that is the—search in this case.

"THE COURT:   Oh. I suppose since I need to fall down on this issue, one side or the other, the Court would find

that that is not a search. That the mere act of knocking on the door, and saying *** 'Open the door, Jose. Are you Jose?' is not in and of itself a search."

After the court denied the motion to suppress, the parties proceeded to a stipulated facts bench trial, where defendant was ultimately convicted.

On appeal, defendant renews his argument that Smith's "open the door" statement constituted an order that amounted to an unconstitutional search. Rather than renew its argument made to the trial court that the proper inquiry was whether the interaction between defendant and Smith was a stop, the state contends that Smith's directive was not an order, and, therefore, no search occurred. Specifically, the state argues that the trial court implicitly found that Smith's directive was not an order when the court concluded that no search had occurred. The state does not argue that, at the time he knocked on defendant's door, Smith had developed probable cause or that any exception to the warrant requirement applied. As explained below, we conclude that the trial court erred in denying defendant's motion to suppress.

As an initial matter, we reject the state's contention that the trial court made an implicit factual finding that Smith's "open the door" statement was not an order. First, we do not understand the trial court to have found that Smith's "open the door" statement was a request to open the door, rather than an order or directive to do so. Second, even if the trial court implicitly made that finding when it concluded that there was not a search, that finding cannot be sustained on this record. Smith's words were unconditional and were not posed as a request to open the door.[2] *See State v. Freund*, 102 Or App 647, 652, 796 P2d 656 (1990) (concluding that the officer's words that he "was there" to pick up the marijuana were "unconditional" and could not be characterized

_____

[2] Although the trial court discussed Smith's statements "Open the door, Jose" and "Are you Jose?" as if they were said together, a review of the body-cam video entered into evidence during the suppression hearing shows that defendant opened the door after the first statement and before Smith asked if he was Jose. The state does not assert Smith's question mitigated any coercive effect on the first directive to open the door. Indeed, because the record shows that the question was asked only after the door was opened, it could not have had any arguable mitigating effect.

as a request for consent to search). Therefore, the question before us is whether the trial court erred in concluding that Smith did not effectuate an unconstitutional search when he directed defendant to open the door.

In addressing whether there was a search, it is important to note that defendant does not assert that Smith's act of knocking on the door, standing alone, was an impermissible search. Nor, does the state does argue that, at the time Smith knocked on the door, there was probable cause or any other justification for a warrantless search. Rather, it was Smith's directive to open the door, followed by defendant's acquiescence or compliance with that directive, that amounts to a search. That is, Smith was able to observe signs of intoxication only because defendant complied with Smith's order to open the door. Had defendant not complied and kept the door shut, Smith's directive would not have resulted in a search. *Cf. California v. Hodari D.*, 499 US 621, 629, 111 S Ct 1547, 113 L Ed 2d 690 (1991) (holding no Fourth Amendment seizure occurred when a juvenile did not comply with an officer's command to halt); *United States v. Pope*, 686 F3d 1079, 1081 (9th Cir), *cert den*, 568 US 1018 (2012) (concluding that there was not a search under the Fourth Amendment where the defendant did not comply with the officer's command to empty his pockets). Thus, the question reduces to whether Smith had a lawful basis to direct defendant to open the door so that he could further his investigation.

To answer that question, we turn to *State v. Finlay*, 170 Or App 359, 12 P3d 999 (2000). In *Finlay*, an officer received a tip that a car was driving erratically near his location. *Id*. at 361. The officer took a description of the car and the license plate from the tip and was able to trace the car to the defendant. When the officer saw the car run a stop sign, the officer stopped the defendant, cited him, and told him that he was free to leave. The defendant, however, decided to remain at the scene to discuss the citation and eventually admitted that he was driving erratically due to mechanical problems. *Id*. at 361-62.

Meanwhile, another officer arrived to provide backup. That second officer, who was unaware that the original officer

had completed an investigation, asked the defendant for his registration, and attempted to compare the Vehicle Identification Number (VIN) on the dashboard to the registration. The officer then "advised the two occupants that [he] wanted them to step from the vehicle" so that he could check the VIN inside the driver's door post. *Id.* (internal quotation marks omitted). The defendant opened his door, the second officer looked at the VIN and, from that vantage point, discovered evidence of a crime. *Id.* at 362.

The defendant moved to suppress that evidence, arguing that the second officer did not have probable cause to order the defendant out of his car. *Id.* at 363. The trial court denied the motion, and the defendant renewed his argument on appeal. *Id.* at 363-64. We noted that the second officer "ordered defendant and his passenger to get out of the car so that he could inspect the doorpost VIN. Thus, this is not a case in which the investigating officer merely 'asked' if the defendant would be willing to leave his [or her] vehicle or sought, and received, consent to search." *Id.* at 364 (emphasis omitted). We concluded that the second officer "had no lawful basis to order defendant and his passenger from the car so that [the officer] could inspect the doorpost VIN. That is, [the officer] compelled defendant to open the car door to reveal that which was otherwise concealed. That was an unlawful search." *Id.*

Similarly, in this case, Smith told defendant to open the door, which allowed Smith to observe signs of intoxication that were otherwise concealed. *See State v. Turechek*, 74 Or App 228, 232-33, 702 P2d 1131 (1985) (holding that an "officer conducted a search *** when he opened the door to inspect the VIN"). If Smith had knocked on the door and merely waited for a response, or knocked on the door, identified himself, and asked "would you please open the door," this case would be different. Here, however, Smith's statement was not a question. There was nothing about Smith's intonation or inflection to suggest that the phrase "open the door" was a request. Rather, it was a command at 3:00 a.m. from an armed, uniformed law enforcement officer standing outside of defendant's home. Smith's command—without a lawful basis—compelled defendant to open the door. That was an unconstitutional search.

Because it is undisputed that Smith did not develop probable cause to arrest defendant for DUII until after defendant opened the door and revealed evidence of his impairment and the hit-and-run offense, and the state offers no other justification for the search, the trial court erred in denying the motion to suppress.

Reversed and remanded.