Argued and submitted September 23, 2019, reversed and remanded
March 11, 2020

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

WILLIAM ADAMS, JR.,
aka William Anthony Adams,
aka William Adams,
*Defendant-Appellant.*

Klamath County Circuit Court
17CR41285, 17CR46976;
A167337 (Control), A167338

462 P3d 761

Defendant appeals judgments revoking his probation, which were partially based on the finding that he had violated the special condition of his probation requiring him to complete family court. Defendant contends that the trial court erroneously revoked his probation for failing to successfully complete family court when the reason he did not complete the program was that wife had successfully completed family court and was allowed to move the children out of state. *Held*: Where the record shows that the trial court understood that defendant's transfer out of family court was due to the children being returned to mother and having moved out of state, the trial court erred in revoking defendant's probation on that basis. The family court probation condition cannot plausibly be construed to require defendant to participate in a family court program that was not offered to him for reasons beyond his control. Because the record does not indicate whether the trial court would have revoked defendant's probation absent that impermissible basis, the Court of Appeals reverses and remands.

Reversed and remanded.

Marci Warner Adkisson, Judge.

Rond Chananudech, Deputy Public Defender, argued the cause for appellant. On the brief were Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Erica Herb, Deputy Public Defender, Office of Public Defense Services.

Christopher A. Perdue, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Ortega, Presiding Judge, and Shorr, Judge, and James, Judge.

ORTEGA, P. J.

Reversed and remanded.

**ORTEGA, P. J.**

Defendant appeals judgments revoking his probation, which were based on findings that he had violated the special condition of his probation requiring him to complete family court and the general conditions of his probation requiring him to report and abide by the direction of the supervising officer, ORS 137.540(1)(m), and obey all laws, ORS 137.540(1)(j). Defendant argues, among other contentions, that the trial court's foundational finding regarding his failure to complete family court was in error given that his children were returned to their mother's care and the family had moved out of state. We conclude that the trial court erred in revoking defendant's probation on that basis and, because the record does not indicate whether the trial court would have revoked defendant's probation absent that impermissible basis, we reverse and remand.

For purposes of our analysis, the relevant facts are largely procedural. On August 17, 2017, after pleading no contest, defendant was convicted and sentenced to a downward dispositional departure of probation on one count of first-degree criminal mistreatment (Case No. 17CR41285) and one count of first-degree custodial interference (Case No. 17CR46976). As part of his probation, defendant was ordered to, among other requirements, comply with "all general conditions of probation (ORS 137.540)." ORS 137.540 includes the requirements that a defendant must "[o]bey all laws," ORS 137.540(1)(j), and "[r]eport as required and abide by the direction of the supervising officer," ORS 137.540 (1)(m). Defendant was also ordered to comply with the special conditions of probation, ORS 137.540(2), including "attend Family Court hearings at least monthly, at such times and locations as may be further directed by the court." For Case Number 17CR41285, defendant was additionally ordered to "complete the Batterer Intervention Program [BIP]."

On November 3, the court issued an order accepting defendant into the Klamath County Family Court program and ordered him to, among other requirements, "appear for review hearings as scheduled unless otherwise notified by the Court" and to "cooperate fully with the Family Court Team."

Although defendant had been ordered to complete the BIP, a treatment program for individuals involved in intimate partner violence, the leadership team at the probation department switched him to the Abuse Intervention Program. The team believed the Abuse Intervention Program was a better fit because defendant's case involved abuse of a child rather than an intimate partner. Before being switched to the Abuse Intervention Program, defendant failed a polygraph. Additionally, defendant met with Jasmani Melgoza, the Batterer and Abuse Intervention Programs treatment provider for Klamath County Community Corrections, on October 26 to complete his BIP assessment. Melgoza presented defendant with the rules of the BIP to sign, but defendant refused to sign the rules until he spoke to an attorney. As a result, the following day, defendant's probation officer, Tilli Trushell, alleged that defendant was in violation of his probation for failing to successfully complete the BIP and initiated a probation violation hearing. On December 15, the probation violation was dismissed by stipulation of the parties.

On December 28, after being transferred to the Abuse Intervention Program, defendant showed up for one of his classes. Skyler Schram, an Abuse Intervention Program facilitator leading the group, asked defendant to sign an addendum acknowledging that he had failed the polygraph that he had taken as part of the BIP (which was required for defendant to move forward in treatment) and to fill out a weekly report. Defendant refused to do either and became argumentative. His behavior began to negatively impact another group member, and Schram asked him to leave and then contacted Trushell alerting her that defendant had been suspended from treatment. As a result, on the following day, Trushell issued a citation requiring defendant to appear in court for a probation violation hearing and asserting that defendant had violated his probation by failing to abide by the direction of his supervising officer.

At some point between December 15, 2017 and January 12, 2018, before defendant had completed the requirements of the family court program, he was transferred out of that program and placed on regular supervision.

His wife and the mother of his children was participating in family court at the same time defendant was and, before his transfer out of the program, her family court case had been successfully terminated and DHS had returned the children to wife's care. By the time of the January 12, 2018, hearing, the children had moved to North Carolina to live with their maternal grandmother. (As we will later discuss in more detail, the parties have different views regarding the trial court's resolution of the factual question of why defendant was transferred out of family court.)

On January 25, before the probation violation hearing, Trushell filed a probation violation report describing two violations. First, Trushell asserted that defendant had violated the general condition to "abide by the direction of the supervising officer" when he showed up to his group on December 28, 2017, and "refused to fill out the necessary paperwork" and became "disruptive." Second, Trushell asserted that defendant violated the special condition to "[a]ttend Family Court." Trushell's report stated that "Judge Osborne dismissed [defendant's] case from family court unsuccessfully as [he] had not completed all of the requirements."

On February 21, Trushell filed an addendum to the January 25 report, adding an additional assertion that defendant had failed to obey all laws. On December 22, 2017, defendant had sent an email to Crystal Agard-Miller, the treatment supervisor at the probation department, that included an attachment of a recording. The recording, made by defendant using his cell phone without Melgoza's knowledge, captured defendant's October 2017 BIP assessment.

At the probation violation hearing on March 6, the state called a number of witnesses who testified to all three asserted violations. With regard to defendant's alleged failure to attend family court, the following exchange occurred between the state and Trushell:

"[State]: *** Did you attend Family Court staffings?

"[Trushell]: I did.

"[State]: Did you also attend Family Court, the actual proceedings?

"[Trushell]:   I did.

"[State]:   *** On January 12th, 2018, did Judge Osborne order that [defendant's] case be returned to the regular docket?

"[Trushell]:   I can't recall the exact date but, yes, the last time that [defendant] appeared in Family Court she did.

"[State]:   *** And at that time was it your understanding that he had successfully completed Family Court?

"[Trushell]:   No."

Defendant called wife to testify. The following exchange occurred between defense counsel and wife:

"[Defense Counsel]:   What is your understanding about what happened with Family Court and [defendant]?

"[Wife]:   *** So on December 15th—well, the children had actually been returned to me at the end of November. So they stayed here with me for a while, I was set to start a new job in Alaska for nursing so on December 15th was the last time that I think I actually had to appear in Court. I came to Court; *** Judge Osborne stated that *** it was over for me, that I could take my children to North Carolina to be watched by my mom while I did my travel assignment and I was to go back and forth. [Defendant] was to stay here and finish, he had a couple more classes of this [Abuse Intervention Program] to do. ***

"* * * * *

"[Defense Counsel]:   *** Were you in Court when his Family Court was terminated?

"[Wife]:   Yes. So that was January 12th. *** So on January 12th it was found that because the kids were *** with my mother in North Carolina, because they're out of State they could not continue Family Court in the fashion that it was. *** [The family court judge said] *** anything that needs to be heard has to be *** heard by Judge Adkisson [on the regular docket] because they have to end Family Court because the kids are no longer in the State."

Testimony was also presented at the probation violation hearing discussing defendant's overall conduct on probation between late October and December 28, 2017. It

was noted that defendant attended all of his appointments and treatment sessions, had good treatment reports, and had obtained his required mental health assessment. However, defendant was characterized as being very difficult to work with on probation; he was defiant, argumentative, and unwilling to follow directions. After Trushell filed the December probation violation allegation, defendant was eventually trespassed from the probation department. Defendant's probation officer and treatment team also expressed concerns about defendant's ability to perform on probation and successfully complete treatment.

At the end of the hearing, defendant argued that he did not violate the conditions of his probation. Specifically addressing family court, defendant contended that he had completed all of the requirements of family court and was dismissed from the program due to his children being moved out of state.

The trial court determined that defendant had violated all three conditions of his probation. It found that, by getting suspended from treatment, he failed to abide by the direction of his supervising officer, and that he failed to obey all laws when he surreptitiously recorded his October BIP assessment.

Regarding the violation of the condition concerning family court, the court discussed the basis for defendant's transfer out of that program. Before sentencing, the trial court explained:

"*** [W]hat the tag notes say when we get to December and we start talking about the problems in Family Court, it says, children returned to [wife], her services are done, probation will be determined completed, dependency case will remain open. [Wife] is excused from any further appearances; DHS case is still open, rules apply. Crawford will write down expectations and guidelines of DHS for both parents. [Wife] and children are leaving State. [Defendant] requests visitation, DHS will arrange. PV hearing on [defendant] today, PV dismissed, bail returned to PV only minus processing fee.

"So the PV was dismissed, the probation was not dismissed but you were sent out of Family Court at that time.

So then what happens is that we then have another problem with probation as we know on the 28th, and then you guys are back in Family Court even though I'm not really sure why it went that way, but everybody was in Family Court, the kids had been returned to [wife], [wife] has successfully completed Family Court and the case had been dismissed. [Defendant's] criminal case to be returned to Judge Adkisson [on the regular docket], PV pending on [defendant]. He was arraigned at that time.

"So there is nowhere in here that anybody said to you that you had successfully completed Family Court, nor did anybody say that you had successfully completed your probation. In fact it explicitly says, Court explains to [defendant] that he has not completed his services or his probation. * * *"

During sentencing, the court found that defendant "did not successfully complete Family Court." In response, defendant stated that he was dismissed from family court "due to [his] children being out of State," and the court replied:

"That's because your wife did what she was supposed to do and DHS returned the children to [her].

"* * * * *

"You did not successfully complete Family Court, it is clear on every record that I have reviewed that nobody said that you had successfully completed Family Court."

With regard to defendant's overall performance and conduct while on probation, the court found that he did not follow the rules of the program and was disruptive. It also noted that defendant's conduct had gotten him trespassed from the probation department which "just doesn't happen." As a result, the court revoked defendant's probation and imposed a combined sentence of 30 months in prison followed by 36 months of post-prison supervision.

We begin by addressing defendant's argument that the trial court erred in determining that he violated the special condition of probation regarding family court, which obviates the need to address the remaining arguments. Defendant contends that the court erroneously revoked his probation for failing to successfully complete family court

when the reason he did not complete the program was that wife had successfully completed family court and was allowed to move the children out of state. Defendant notes that there was no evidence that he had failed to attend any of the family court hearings or that he failed to complete any of the requirements of family court.

The state takes a different view of the trial court's ruling and the basis for its determination that defendant had violated the condition regarding participation in family court. Specifically, the state points to Trushell's testimony and probation violation report contending that both show that defendant was dismissed from family court *because he failed to abide by the family court expectations*. Thus, the dispute between the parties centers on the trial court's *explanation* supporting its determination that defendant had violated the condition regarding family court.

In the state's view, we should presume that the trial court found that defendant failed to abide by the family court expectations, because that would support its finding that defendant was in violation. For that proposition, the state argues that the record contains conflicting evidence on this point and contends that we should presume that the court made implicit findings on the disputed facts consistently with its ultimate conclusion that defendant failed to successfully complete family court. *See Ball v. Gladden*, 250 Or 485, 487, 443 P2d 621 (1968) ("If findings are not made on all such facts, and there is evidence from which such facts could be decided more than one way, we will presume that the facts were decided in a manner consistent with the ultimate conclusion.").

The problem with the state's argument, however, is that we do not presume an implicit finding where the record does not support it or shows that such a finding was not part of the trial court's chain of reasoning forming the basis of its ultimate legal conclusion. *See Pereida-Alba v. Coursey*, 356 Or 654, 671, 342 P3d 70 (2015) ("If an implicit factual finding is not necessary to a trial court's ultimate conclusion or is not supported by the record, then the [*Ball*] presumption does not apply." (Citation omitted.)). In other words, we do not apply that presumption when it would result in findings

inconsistent with the court's view of the record. That is the case here.

Here, the court's colloquy with the parties, although somewhat unclear, reflects its understanding that defendant had been transferred out of family court because DHS had returned the children to wife and they were no longer living in Oregon. First, the trial court referred to the "tag notes" that "the kids had been returned to [wife], [wife] has successfully completed Family Court and the case had been dismissed. *Father's criminal case to be returned to Judge Adkisson*, PV pending on father." (Emphasis added.) Further, in response to defendant's comment that his dismissal from family court was "due to [his] children being out of State," the court replied, "[t]hat's because your wife did what she was supposed to do and DHS returned the children to your wife." Those statements reflect the trial court's understanding that defendant's transfer from family court to the regular docket was the product of the move—that DHS had returned the children to wife and the children left the state.[1] Thus, we will not presume that the court instead implicitly found that defendant was transferred out of family court because he failed to abide by the rules of the program, which would be contrary to the trial court's understanding of the record.[2]

We next turn to whether the trial court permissibly revoked defendant's probation for violating the family court condition in light of the trial court's understanding. We

[1] Moreover, Trushell's report and testimony provide no evidence that defendant was transferred out of family court because he was not abiding by the rules. Trushell's testimony and report simply confirm what is not disputed on appeal—that at the time defendant was transferred out of family court, he had not yet completed the requirements of the program and was, thus, terminated from the program as "unsuccessful." Moreover, at the time defendant was transferred out of the program on January 12, defendant had no prior violations of the program and was otherwise in compliance. Defendant had a pending probation violation at the time of his transfer, but it is undisputed that defendant was not found in violation on that allegation until March 2018, about two months after he was already transferred out of family court, and nothing in the record indicates that the court understood the pending probation violation to be the reason that defendant was transferred out of family court.

[2] We note that on January 12, 2018, the same day as defendant's last appearance in family court, judgments were entered in the Oregon eCourt Case Information system, the official court register, terminating jurisdiction over defendant's children.

review a trial court's interpretation of a probation condition for legal error. *See State v. Hardges*, 294 Or App 445, 448, 432 P3d 268 (2018) (applying legal error when construing probation condition to "abide by the direction of the supervising officer"). As noted above, the state does not defend the trial court's ruling to the extent that it was based on a finding that defendant had failed to successfully complete the program as a result of his transfer out of family court when DHS returned the children to wife's care and they moved out of state. That implicit concession is well-taken. The probation condition required defendant to "attend Family Court hearings." The order accepting defendant into family court required defendant to "cooperate fully with the Family Court Team." The only plausible understanding of the probation condition is that defendant must attend family court hearings and cooperate when there are family court proceedings to attend—that is, he must continue to show up and comply with the requirements of the program as long as he is in the program. The condition cannot plausibly be construed to require defendant to participate in a family court program that is not offered to him for reasons beyond his control. Therefore, the trial court erred in revoking defendant's probation on that basis.

The final issue is the proper remedy. Defendant argues that we should reverse and remand for further proceedings because the record is not clear whether the court would have revoked defendant's probation absent its erroneous finding that defendant violated the condition related to family court. The state argues that the trial court "evinced a clear intent" to revoke probation on the other valid bases for revocation and because the trial court credited the "ample evidence" of defendant's character traits that supported that he was not amenable to supervision.

We agree with defendant that the record does not indicate whether the trial court would have revoked defendant's probation absent the impermissible basis. We acknowledge that the trial court discussed at length that defendant was defiant and argumentative and considered to be difficult in court and while on probation. However, during sentencing, the trial court discussed both the permissible and impermissible conditions in its decision to revoke, along

with defendant's character traits, and the court did not give any indication what it would do in the absence of the impermissible violation. *See State v. Pike*, 49 Or App 67, 71, 618 P2d 1315 (1980) (reversing and remanding where the record did not indicate whether the trial court would have revoked "if it had considered only those allegations that could legally provide the basis for revocation"); *Rivera-Waddle*, 279 Or App 274, 379 P3d 820 (2016) (same).[3] Accordingly, we reverse the judgments revoking probation and remand for further proceedings to allow the court to determine whether revocation was proper absent the impermissible basis.[4]

Reversed and remanded.

---

[3] We also note that a trial court cannot consider character traits unrelated to any probation violation allegation as a basis to revoke probation. *See State v. Keleman*, 296 Or App 184, 191, 437 P3d 1225 (2019) ("[T]he plain terms of [OAR 213-010-0001] make a trial court's exercise of its revocation authority contingent on a finding of either a violation or a new crime.").

[4] The state concedes that, in light of *Hardges*, decided after the trial court's ruling, the trial court plainly erred in finding that, by getting suspended from treatment, defendant violated the statutorily required condition to report and abide by the direction of the supervising officer, ORS 137.540(1)(m). The state argues, however, that we should not exercise our discretion to correct the error because any error was harmless. The state's harmlessness argument is based on its contention that the court lawfully revoked probation on the allegations that defendant failed to successfully complete family court and obey all laws, and because the record shows, in the state's view, that defendant was not amenable to supervision. Although the state's concession is well-taken, we need not decide the issue of whether that error is harmless. Given the state's sound concession, and in light of our conclusion that the court did not properly revoke probation on the basis that defendant failed to complete family court, this issue is not likely to arise on remand.